# United States Court of Appeals for the Federal Circuit

---

**CATHERINE ROBERSON,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2009-7093

---

Appeal from the United States Court of Appeals for Veterans Claims in 05-3243, Judge Alan G. Lance, Sr.

---

Decided: June 7, 2010

---

SANDRA E. BOOTH, Sandra E. Booth Attorney at Law, of Columbus, Ohio, argued for claimant-appellant.

ALLISON KIDD-MILLER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and AMANDA R. BLACKMON,

Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

—————————————

Before BRYSON and MOORE, *Circuit Judges*, and FOLSOM, *Chief District Judge*.[1]

FOLSOM, *Chief District Judge*.

Appellant Catherine Roberson appeals the decision of the Court of Appeals for Veterans Claims (Veterans Court) affirming the Board of Veterans' Appeals (Board) decision denying Mrs. Roberson's claim for death and indemnity compensation (DIC) pursuant to former 38 U.S.C § 1151 for her husband's death from non-service-connected cancer. Because the Veterans Court properly interpreted former 38 U.S.C. § 1151, we affirm.

## BACKGROUND

Mrs. Roberson's late husband, Isaac Roberson, served in the United States Army from 1956 until he was granted an honorable discharge in 1959. His medical history includes a heart attack in 1974 and a non-disabling cerebrovascular accident (CVA) or stroke in 1974 with a second CVA in 1990, which left the veteran with some paralysis on his left side. There is no claim that the heart attack or CVAs are service-connected.

Mr. Roberson regularly received treatment at VA medical facilities, including the Columbus, Ohio VA Outpatient Center and VA hospitals in Chillicothe and Cincinnati, Ohio. He also occasionally was treated by emergency room personnel at Riverside Methodist Hospi-

---

[1] The Honorable David Folsom, United States District Court for the Eastern District of Texas, sitting by designation.

tal (Riverside), a private facility in Columbus, Ohio. Beginning in March 1993, Mr. Roberson was treated exclusively by VA providers over the next two years. In January 1995, he visited the Columbus, Ohio VA Outpatient Center for modification of an orthotic and for stroke follow-ups. His last VA hospital admission prior to his death was in March 1995, when he was seen for a period of respite care. At that time, Mr. Roberson had no specific complaints other than a "head cold," and he was treated for mild pharyngitis. In May 1995, Mr. Roberson was seen by a VA physician who noted his increasing symptoms (greater use of assistive devices, cane, grab bars, lift chair), but attributed those symptoms to his history of strokes.

In June 1995 Mrs. Roberson took her husband to Riverside after he began experiencing slurred speech and intermittent vision impairment. The computed tomography (CT) scan performed at Riverside yielded negative results. Later that month, Mr. Roberson visited Riverside for a follow-up examination at which time the treatment provider found him to be agitated, anxious, and frustrated because he was unable to do things or make himself understood. The treatment provider diagnosed Mr. Roberson with "adjustment disorder."

Mr. Roberson was again admitted to Riverside through its emergency room in August 1995. During this visit, however, a CT scan showed a significant obstructed hydrocephalus—a condition characterized by abnormal accumulation of fluid in the cranial vault—with a mass in the right cerebellum. The subsequent magnetic resonance imaging (MRI) showed a five centimeter mass and metastasis in the right cerebellum. Mr. Roberson also had extensive involvement in the liver and subcutaneous masses with possible metastasis to bone. The physician's clinical impression was to "rule out prostatic carcinoma

with cerebral metastasis." A consultation report prepared at the time by Riverside physician Dr. James D. Pritchard indicated that the origin of Mr. Roberson's cancer was "most likely" in the lung although other sources could not be ruled out. Mr. Roberson died two months later in October 1995 from cardiac arrhythmia caused by pneumonia brought on by the metastatic cancer.

At the time of his death, Mr. Roberson had an appeal pending for compensable ratings for arthritis of his left foot and right great toe. In February 1996, appellant Mrs. Roberson filed a claim for accrued benefits based on her husband's increased ratings that were pending. Three months later, she filed a claim for DIC benefits based on the contention that her husband's death resulted from his treatment at the VA medical facility. Specifically, Mrs. Roberson claimed that the VA physicians failed to diagnose her late husband's cancer and that this failure hastened his death. In June 1996, the VA Regional Office denied Mrs. Roberson's DIC claim because the evidence failed to show that the cause of Mr. Roberson's death was related to his military service or to a service-connected condition. Mrs. Roberson persisted, but in September 1996 the Regional Office denied her claim based on former 38 U.S.C. § 1151.

In November 1998, the Board similarly denied DIC benefits based on a lack of service connection for the cause of Mr. Roberson's death and under former § 1151. The Board, however, granted entitlement to accrued benefits and assigned 10% disability ratings for Mr. Roberson's left foot and right toe disabilities. The Veterans Court nevertheless vacated the Board's November 1998 decision and remanded the matter for further development, including compliance with the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096. *See*

*Roberson v. Principi*, No. 99-352, 2001 WL 290189, at *3 (Vet. App. Mar. 22, 2001).

Upon the Board's request for additional development, two VA physicians from the Bronx, New York VA medical center provided an opinion in July 2003 regarding Mr. Roberson's cancer and death. In that opinion, the physicians stated that although the primary site of the cancer was undetermined, the "possible primary sites for this cancer include head and neck tumors, prostate, and bowel." Onset of the cancer occurred four to six months before the August 1995 diagnosis, concluded the VA physicians. The VA physicians also noted that "neither of the brain metastases was detectable on [a] CT scan of the head in June, 1995" and that "the second of the two brain metastases was undetectable on CT scan of the head on 8/14/95, two days before it was discovered on 8/16/95." According to the VA physicians, "the multiple scans and x-rays that were performed in 1995 prove that the disorder was first manifested in August, 1995" and "was not present on testing prior to July, 1995."

The Board also asked the VA physicians to answer specific questions, including:

> Did VA fail, during a period of VA treatment, to diagnose the disorder which caused the veteran's death, when a physician exercising the degree of skill and care ordinarily required of the medical profession reasonably should have diagnosed the condition and rendered treatment?

The VA physicians were additionally asked to determine whether the veteran suffered any additional disability or death as a result of the VA's failure to diagnose the veteran's cancer. In response, the VA physicians stated:

There are no symptoms recorded during the episodes of VA treatment suggestive of a medical condition that warranted further investigation. In the absence of a history to suggest a disorder other than the multiple strokes, and in the absence of a change in physical findings to suggest a new or worsening process, further investigative studies were not clinically indicated.

The VA physicians added:

It is impossible to say if [the veteran] could have been cured if the disease had been detected earlier. Death from extensive small cell carcinoma with brain involvement usually, but not always, results in death within 10 months. Any individual patient, however, may not follow this statistic. Small cell carcinomas have a median survival with treatment of 10 months.

The Board on remand also considered a January 1998 letter Dr. Pritchard wrote on behalf of Mrs. Roberson in which he opined that as of August 1995, Mr. Roberson "already had brain involvement from his tumor, and in addition, the C[]T scan showed extensive involvement in the liver, lymph nodes, and lung. Therefore his disease was advanced at the time of diagnosis." Dr. Pritchard's letter also stated that the small cell carcinoma had "advanced very quickly and had not been present for a long period of time" with an estimated "onset of perhaps four to eight months prior to the diagnosis."

After reviewing the opinions of the VA physicians, Dr. Pritchard's letter, Mrs. Roberson's lay opinions, and the rest of the evidentiary record, the Board found "no evidence of record suggesting that VA treatment, specifically the lack of a diagnosis of [Mr. Roberson's] small cell carcinoma, had the effect of hastening [Mr. Roberson's]

death." *See Bd. Vet. App. 0525865*, 2005 WL 3916807 (2005).

Mrs. Roberson appealed the Board's decision to the Veterans Court asserting that VA treatment, that is, the failure to diagnose her husband's cancer, had the effect of hastening his death. The Veterans Court affirmed and held that the Board's decision that Mrs. Roberson had not proven her claim to entitlement to DIC benefits under former 38 U.S.C. § 1151 by a preponderance of the evidence was not clearly erroneous. *Roberson v. Shinseki*, 22 Vet. App. 358, 366 (2009). In so finding, the Veterans Court concluded that Mrs. Roberson "has not shown that VA should have diagnosed the veteran's cancer prior to his actual diagnosis." *Id.*

## DISCUSSION

This Court has jurisdiction pursuant to 38 U.S.C. § 7292(c). We review statutory interpretation by the Veterans Court *de novo*. *Glover v. West*, 185 F.3d 1328, 1331 (Fed. Cir. 1999). Absent a constitutional issue, we may not review challenges to factual determinations or challenges to the application of a law or regulation to facts. 38 U.S.C. § 7292(d)(2) (2006).

The main issue is whether the Veterans Court correctly interpreted the previous version of 38 U.S.C. § 1151 by finding that a claim based on an alleged failure to diagnose requires the claimant to show that VA should have diagnosed the condition in question.

The current version of 38 U.S.C. § 1151 provides benefits for a death or disability resulting from VA medical treatment in the same manner as for a service-connected death or disability. This current version of the statute requires the putative claimant to demonstrate "carelessness, negligence, lack of proper skill, error in judgment, or

similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination." *See* 38 U.S.C. § 1151(a)(1)(A).[2] This current version originated as a response to the United States Supreme Court's decision in *Brown v. Gardner*, 513 U.S. 115 (1994). In *Gardner*, the claimant, Mr. Gardner, received surgical treatment at a VA medical center for a herniated disc unrelated to his prior military service. He then experienced pain and weakness in his left calf, ankle, and foot, which he alleged was the result of the surgery and claimed disability benefits under the previous version of § 1151. The previous version of 38 U.S.C. § 1151 provided:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment . . . or as a result of having submitted to an examination . . . , and not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation . . . shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.

Pub. L. No. 85-857, 72 Stat. 1105, 1121 (1958) (renumbered § 1151 at Pub. L. No. 102-83, 105 Stat. 378,406 (1991)).

---

[2] Congress amended 38 U.S.C. § 1151 in 1996. *See* Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act of 1997, Pub. L. No. 104-204, 110 Stat. 2874, 2927 (1996). When this opinion refers to "former § 1151" or the "previous version of 38 U.S.C. § 1151," it refers to the statute prior to its amendment in 1996.

The VA and the Board denied Mr. Gardner's claim. Both the VA and the Board relied on 38 C.F.R. § 3.358(c)(3) (1993), which permitted recovery under former § 1151 only if the injury "proximately resulted [from] carelessness, negligence, lack of proper skill, error in judgment, or similar instances of indicated fault" on the part of the VA, or from the occurrence during treatment or rehabilitation of an "accident," defined as an "unforeseen, untoward" event. *Gardner*, 513 U.S. at 117. The Veterans Court reversed the Board's decision and the Federal Circuit affirmed the Veterans Court's judgment. *Gardner v. Derwinski*, 1 Vet. App. 584 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993). In affirming, the Supreme Court stated:

> This language [of former § 1151] is naturally read simply to impose the requirement of a causal connection between the "injury" or "aggravation of an injury" and "hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation." Assuming that the connection is limited to proximate causation so as to narrow the class of compensable cases, that narrowing occurs by eliminating remote consequences, not by requiring a demonstration of fault.

*Gardner*, 513 U.S. at 119. Thus, according to the *Gardner* Court, "the text and reasonable inferences from it give a clear answer" that a claimant need not prove fault in order to recover under former § 1151. *Id.* at 120.

The claimant in *Gardner* sought relief for aggravation connected to VA treatment. In subsequent cases, however, the VA and the Board repeatedly faced the situation of § 1151 claims for a VA failure to treat or diagnose. As a result, the Board requested a legal opinion from the VA General Counsel about whether former § 1151 authorizes

compensation for claims based on a VA omission or failure to diagnose, and if so, what essential elements of such a claim must be established in order for a claimant to prevail on such a claim. In February 2001, the VA General Counsel issued its opinion (GC Opinion). According to the GC Opinion, neither the language of former § 1151 nor its legislative history suggests an intent to distinguish between acts of commission, i.e. treatment or surgery, and acts of omission such as a failure to diagnose. With respect to the elements of a claim based on a failure to diagnose or treat, the GC Opinion stated that the entitlement to benefits based on such a claim would ordinarily require a determination that: (1) the VA failed to diagnose and/or treat a preexisting disease or injury; (2) a physician exercising the degree of skill and care ordinarily required of the medical profession reasonably should have diagnosed the condition and rendered treatment; and (3) the veteran suffered disability or death which probably would have been avoided if proper diagnosis and treatment had been rendered.

The GC Opinion recognized that the second element ostensibly conflicts with the *Gardner* decision; however, the GC Opinion also recognized that the *Gardner* decision plainly required a showing of a causal connection between an injury or aggravation of an injury and VA hospitalization or treatment. Under the common law pertaining to claims based on a failure to diagnose, the GC Opinion reasoned, a showing that the failure was due to the lack of ordinary care or skill is a necessary element of establishing the causal relationship between treatment and injury. The VA General Counsel added that the *Gardner* Court removed the necessity of showing fault in addition to showing causation but did not address whether showing a failure to exercise ordinary care constituted an element of entitlement.

Mrs. Roberson primarily argues that the Veterans Court and the VA General Counsel erroneously reinterpreted the *Gardner* ruling and reinserted a negligence or fault standard into 38 U.S.C § 1151 (1996) for one class of cases: acts of omission. According to Mrs. Roberson, *Gardner* is binding judicial precedent and the Veterans Court cannot revisit the previous version of 38 U.S.C. § 1151 and reinsert a fault standard into a statute, the language of which the Supreme Court found to be clear. With respect to the GC Opinion, Mrs. Roberson contends that it confuses the element of causation with the principle of liability thus rendering it legally incorrect. Mrs. Roberson adds that whether an injury was the result of VA medical care is a wholly separate inquiry from whether the VA providers were negligent for former § 1151 purposes.

In response, the government argues that the Veterans Court permissibly interpreted the previous version of 38 U.S.C. § 1151 as applied to claims that the VA failed to diagnose a disease or condition. The government submits that the *Gardner* decision did not address the question presented in this case, to wit, what former § 1151 requires a claimant to demonstrate when he or she alleges that VA's failure to diagnose a disease caused an additional disability or death. Since the *Gardner* Court left open the question of whether or how an omission, such as a failure to diagnose, causes a particular claimant additional disability, the Veterans Court's interpretation rests upon a permissible construction of the statute, the government adds. In the alternative, the government argues that the Board's factual finding that no evidence of record suggested that the VA's lack of diagnosis had the effect of hastening Mr. Roberson's death supports the denial of Mrs. Roberson's claim and that this Court does not have the jurisdiction to review such a finding.

Mrs. Roberson claims that VA's failure to diagnose and treat her husband's cancer resulted in additional disability and hastened his death. As the *Gardner* Court stated, however, demonstrating a "causal connection between the 'injury' or 'aggravation of an injury' and 'hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation'" is a fundamental prerequisite to recovery under the previous version of 38 U.S.C. § 1151. *Gardner*, 513 U.S. at 119. Establishing this causal connection, also called "proximate causation" by the Court, separates the compensable claims from the non-compensable claims. *Id.* Neither party disputes this proximate causation requirement; however, Mrs. Roberson's position—that a claimant can demonstrate causation without including a fault standard or proving a breach of duty—overlooks this proximate cause requirement. Put another way, Mrs. Roberson's position fails to provide a sufficiently discernable standard for distinguishing the "failure to diagnose" claims that are compensable from those that are not. A fault standard is needed in failure-to-diagnose claims under former § 1151 because there would otherwise be no means for eliminating remote consequences or excluding coverage based on an injury's or a disease's natural progression. *Id.*; *see also id.* at n.3.

As the GC Opinion recognized, a fault requirement appears at first blush to be inconsistent with *Gardner*. However, Mr. Gardner sought recovery for aggravation of injury resulting from the VA's surgical treatment—an act of commission—while Mrs. Roberson seeks to recover for VA's failure to diagnose—an act of omission. Contrary to Mrs. Roberson's argument, this distinction is neither insignificant nor illusory. In a commission case, a claimant may meet his or her burden as to causation but not as to negligence. For example, Mr. Gardner may be able to

establish that VA surgical treatment caused the weakness in his left leg, ankle, and foot but not be able to establish that the VA negligently performed the surgery. The *Gardner* Court held that such circumstances did not preclude recovery under former § 1151. In an omission case, by contrast, the only way to show causation is to demonstrate that the VA failed to diagnose when it should have. Without a showing that the VA should have diagnosed a condition, the VA would be subject to insuring for every possible condition that a veteran has, even if unrelated to service or VA treatment. Similarly, without a showing that the VA should have diagnosed the condition, the VA would be subject to insuring for an injury's natural progression.

Mrs. Roberson would have the test focus on determining whether an "injury" or "aggravation of an injury" is a "remote consequence" under *Gardner* based on the scope of the VA's medical undertaking. For example, if a veteran has a tooth filled, the VA's failure to diagnose cancer of the foot would be unrecoverable under former § 1151 as a "remote consequence" of the dental treatment. But the VA's failure to diagnose cancer of the throat would be a "closer call" under Mrs. Roberson's test. In this case, Mrs. Roberson contends that VA's evaluation of her husband's deteriorating condition and subsequent diagnosis as "adjustment disorder" removes his injury or aggravation from the category of remote consequences. This amorphous "scope" or "purpose" of the VA's medical undertaking standard provides little guidance and would be unworkable. VA's treating of Mr. Roberson for stroke-related symptoms does not establish *ipso facto* that it should have diagnosed his brain metastasis. Further, any kind of mere temporal or physiological relation alone does not suffice. Such a claim cannot be recoverable under former § 1151 unless a claimant proves that VA should

have diagnosed the condition. Indeed, Mrs. Roberson's "scope of undertaking" rule implicates a fault standard or breach of duty by basing a claimant's recovery on what the VA should have done during examination, diagnosis, and treatment. It cannot be the rule that because the VA was Mr. Roberson's primary caregiver, any omissions should be charged against it just as any commissions might be. Such a rule would wholly ignore the element of causation. The mere fact that VA provided care, even exclusively, cannot by itself mean that VA's failure to diagnose caused aggravation of injury or hastened the veteran's death. At most, exclusive care by the VA may be a factor in determining whether it breached any duty to a veteran by failing to diagnose a disease.

Contrary to Mrs. Roberson's argument, the Board did not err as a matter of law by requiring her to prove that the VA should have diagnosed her late husband's cancer.

Where a claimant seeks to recover under the previous version of 38 U.S.C § 1151 for VA's failure to diagnose, it is impossible to delineate proximate cause without speaking in terms of duty. The Board applied the proper legal standard and determined that no evidence of record suggested that VA treatment had the effect of hastening Mr. Roberson's death. Specifically, the Board found that "[n]one of the disorders leading to death were hastened on account of any incident of VA treatment." The Board concluded that the preponderance of the evidence was against Mrs. Roberson's claim for DIC benefits under former § 1151.

Also, Mrs. Roberson does not contend that the Board erred by discounting her lay opinion as the only direct evidence supporting her claim. This Court lacks jurisdiction to review the Board's factual finding that Mrs. Roberson failed to meet her burden as to causation. *See*

38 U.S.C. § 7292 (absent a constitutional issue, this court "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case"). Mrs. Roberson concedes that unless the Board applied an incorrect standard, its factual determination is beyond our review.

The Veterans Court applied the law to the facts of Mrs. Roberson's case and affirmed, stating that "the appellant has not shown that VA should have diagnosed the veteran's cancer prior to his actual diagnosis." The Veterans Court reviewed the Board's determination that the preponderance of the evidence was against her claim of entitlement under the correct legal standard by requiring Mrs. Roberson to prove that the VA should have diagnosed Mr. Roberson's cancer. Therefore, the Veterans Court did not misinterpret the previous version of 38 U.S.C. § 1151 in affirming the Board's decision.[3]

In sum, to recover under the previous version of 38 U.S.C. § 1151 for an alleged failure to diagnose or similar act of omission, a claimant must establish that the VA should have diagnosed or acted but failed to do so. This is not an element in addition to causation. Instead, it serves as the means of establishing the causal connection, or

---

[3] In its opinion, the Veterans Court defined "injury" or "aggravation of an injury" to be the "failure to diagnose the condition." Under *Gardner*, however, the "injury" for purposes of 38 U.S.C. § 1151 (1996) is the undiagnosed or untreated condition. *Gardner*, 513 U.S. at 118-119. Nevertheless, the Veterans Court's reasoning—that a claimant cannot demonstrate an injury unless it is shown that VA should have diagnosed the condition—accords with the proper legal standard and the requirement of showing causation in claims under former § 1151. Therefore, the Veterans Court's definitions of "injury" or "aggravation of an injury" does not affect our present conclusion.

proximate cause, between the injury or the aggravation of the injury and the VA treatment.

CONCLUSION

Because the Veterans Court correctly interpreted the elements required for a claimant's recovery under the previous version of 38 U.S.C. § 1151, the decision of the Veterans Court is

**AFFIRMED.**

COSTS

No Costs.