# United States Court of Appeals for the Federal Circuit

---

**JOHN L. VIEGAS,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2012-7075

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-0568, Judge Alan G. Lance, Sr.

---

Decided: January 31, 2013

---

LINDA E. BLAUHUT, Paralyzed Veterans of America, of Washington, DC, argued for claimant-appellant. With her on the brief was JENNIFER A. ZAJAC.

SCOTT D. AUSTIN, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. On the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, TODD M. HUGHES, Deputy Director, and ELIZABETH M. HOSFORD, Senior Trial Counsel. Of counsel

on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and CHRISTA A. SHRIBER, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————

Before RADER, *Chief Judge*, NEWMAN and MAYER, *Circuit Judges*.

MAYER, *Circuit Judge*.

John L. Viegas appeals the final judgment of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming a decision of the Board of Veterans' Appeals ("board") that denied his claim for disability compensation under 38 U.S.C. § 1151. *See Viegas v. Shinseki*, No. 10-568, 2011 U.S. App. Vet. Claims LEXIS 2554 (Nov. 23, 2011) ("*Veterans Court Decision*"). Because we conclude that the Veterans Court misinterpreted the causation requirement set forth in section 1151(a)(1), we reverse and remand.

## I. BACKGROUND

The relevant facts are not in dispute. Viegas served in the United States Army from November 1965 to November 1967. After he left the service, he was injured in a diving accident. As a result, Viegas now suffers from "incomplete" quadriplegia.

In May 2004, Viegas participated in a prescribed aquatic therapy session at a Department of Veterans Affairs ("VA") medical center in Palo Alto, California. Afterward, he stopped to use a restroom located in the VA facility. While he was in the restroom, the grab bar he was using to lift himself into his wheelchair came loose from the wall and he fell to the ground. As a result of the fall, Viegas sustained injuries to both his upper and lower extremities. Viegas' medical condition deteriorated after

his fall. Prior to his fall, Viegas could sometimes walk with a walker, but since the accident he can only stand with assistance.

In July 2004, Viegas filed a claim for section 1151 benefits. He asserted that as a result of the fall in the VA restroom he had "incurred severe injury to his shoulder and neck resulting in loss of use of his lower extremities and impairment of his upper extremities." A VA regional office denied Viegas' claim, concluding that he was not entitled to benefits under section 1151 because he was "not in direct VA care at the time of [his] fall." On appeal, the board affirmed, stating that benefits are available under section 1151 only if a veteran's "additional disability [is] the result of injury that was part of the natural sequence of cause and effect flowing directly from the actual provision of hospital care, medical or surgical treatment, or examination furnished by [the] VA and . . . such additional disability was directly caused by that VA activity."

Viegas then appealed to the Veterans Court. The court held that although Viegas' injury occurred in a VA facility, it was not caused directly by "hospital care, medical or surgical treatment, or examination furnished by [the] VA." *Veterans Court Decision*, 2011 U.S. App. Vet. Claims LEXIS 2554, at *2 (citations and internal quotation marks omitted). In the court's view, while Viegas might potentially be able to seek compensation for his injuries under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), the additional disability incurred as a result of his fall was "simply not covered by section 1151." *Veterans Court Decision*, 2011 U.S. App. Vet. Claims LEXIS 2554, at *3. Viegas then filed a timely notice of appeal with this court.

## II. DISCUSSION

We have jurisdiction over appeals from the Veterans Court under 38 U.S.C. § 7292. Questions of statutory interpretation are questions of law, subject to de novo review. *Chandler v. Shinseki*, 676 F.3d 1045, 1047 (Fed. Cir. 2012); *Boggs v. Peake*, 520 F.3d 1330, 1334 (Fed. Cir. 2008).

Pursuant to section 1151, a veteran who sustains a "qualifying additional disability" as a result of VA medical treatment or hospital care is entitled to benefits "in the same manner as if such additional disability . . . were service-connected." 38 U.S.C. § 1151(a); *see Roberson v. Shinseki*, 607 F.3d 809, 813 (Fed. Cir. 2010). In relevant part, section 1151 provides:

> (a) Compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded for a qualifying additional disability or a qualifying death of a veteran in the same manner as if such additional disability or death were service-connected. For purposes of this section, a disability or death is a qualifying additional disability or qualifying death if the disability or death was not the result of the veteran's willful misconduct and—

> (1) *the disability or death was caused by hospital care, medical or surgical treatment, or examination furnished the veteran* under any law administered by the Secretary, either by a Department employee or in a Department facility as defined in section 1701(3)(A) of this title, and the proximate cause of the disability or death was—

> (A) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of

fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination; or

> (B) an event not reasonably foreseeable[.]

38 U.S.C. § 1151 (emphasis added).

Section 1151 delineates three prerequisites for obtaining disability compensation. First, a putative claimant must incur a "qualifying additional disability" that was not the result of his own "willful misconduct." *Id.* § 1151(a).[1]  Second, that disability must have been "caused by hospital care, medical or surgical treatment, or examination furnished the veteran" by the VA or in a VA facility. *Id.* § 1151(a)(1). Finally, the "proximate cause" of the veteran's disability must be "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the [VA]," or "an event not reasonably foreseeable." *Id.* §§ 1151(a)(1)(A), 1151(a)(1)(B).

Section 1151 thus contains two causation elements—a veteran's disability must not only be "caused by" the hospital care or medical treatment he received from the VA, but also must be "proximate[ly] cause[d]" by the VA's "fault" or an unforeseen "event." *Id.* § 1151(a).  There is no question that Viegas' injury meets section 1151's second causation element since it was proximately caused by the VA's failure to properly install and maintain the grab bar in a restroom at its Palo Alto Medical Center. The sole issue presented on appeal is whether his injury

---

[1]    In determining whether a veteran has incurred a "qualifying additional disability," the VA compares the veteran's physical condition immediately prior to the beginning of the hospital care or medical treatment in which the claimed injury was sustained with his condition at the conclusion of such care or treatment. *See* 38 C.F.R. § 3.361(b).

was "caused by" the medical treatment or hospital care he received from the VA.

The government argues that Viegas' injury falls outside the ambit of section 1151 because the statute encompasses only those injuries that are "directly caused by the provision of medical care." In the government's view, section 1151 applies "to disabilities that are caused by actual care or treatment, rather than injuries that coincidentally occur in VA facilities." Viegas disagrees. He asserts that his injury was "caused by" the hospital care he received at the VA's Palo Alto Medical Center because it occurred while he "was receiving care and treatment" at the facility. According to Viegas, section 1151's causation requirement is satisfied whenever a veteran comes to a VA facility for medical treatment and, as a result of the VA's negligence, sustains an injury while on VA premises.

We do not find either the government's or Viegas' interpretation of the phrase "caused by" in section 1151(a)(1) wholly satisfactory. Contrary to the government's assertions, nothing in the statutory text requires that a veteran's injury must be "directly" caused by the "actual" medical care provided by VA personnel. On the other hand, however, section 1151 does not extend to the "remote consequences" of VA medical treatment, *Brown v. Gardner*, 513 U.S. 115, 119 (1994) ("*Gardner*"), and a veteran is not entitled to obtain section 1151 disability benefits simply because he was in a VA medical facility at the time he sustained an injury.

## A. THE STATUTORY TEXT

"As is true in every case involving the construction of a statute, our starting point must be the language employed by Congress." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337 (1979). Nothing in the plain language of section 1151 requires that a veteran's injury must be

"directly" caused by the "actual" provision of medical care by VA personnel. To the contrary, the statute is framed disjunctively, stating that a disability must be "caused by" hospital care or medical treatment that is provided to a veteran "*either* by a [VA] employee *or* in a [VA] facility." 38 U.S.C. § 1151(a)(1) (emphases added). In other words, the causation element is satisfied not only when an injury is directly caused by the actions of VA employees, but also when that injury occurs "in a [VA] facility" as a result of the VA's negligence. By use of the disjunctive, Congress intended to encompass not simply the actual care provided by VA medical personnel, but also treatment-related incidents that occur in the physical premises controlled and maintained by the VA. *See Reiter*, 442 U.S. at 338 (eschewing a "strained construction" of a statute that "would . . . ignore the disjunctive 'or'" contained in the statutory text); *Fed. Commc'n Comm'n v. Pacifica Found.*, 438 U.S. 726, 739-40 (1978) (explaining that where terms "are written in the disjunctive, [it] impl[ies] that each has a separate meaning").

Here, Viegas came to the VA's Palo Alto Medical Center to participate in a recently-prescribed aquatic therapy session that was designed to help him manage his incomplete quadriplegia. He was injured because the VA failed to properly install and maintain the equipment necessary to provide him with medical treatment. The VA cannot reasonably furnish hospital care[2] or medical

---

[2] The VA does not care for most veterans in traditional "hospitals," but instead provides hospital services through a large network of medical centers, such as the Palo Alto Medical Center where Viegas received his prescribed therapy. *See* U.S. Dep't of Veterans Affairs, Veterans Health Administration, Health Care, http://www.va.gov/health/aboutVHA.asp. (last visited Dec. 12, 2012) (explaining that VA medical centers "provide a

treatment to disabled veterans without also providing access to handicapped-accessible restrooms. Restroom grab bars, and other equipment specifically designed to assist the disabled, are a necessary component of the health care services the VA provides because without such equipment many veterans would be unable to avail themselves of VA medical care. *See, e.g.*, *Galloway v. Baton Rouge Gen. Hosp.*, 602 So. 2d 1003, 1008 (La. 1992) (A hospital has a "duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances pecu-

---

wide range of services including traditional hospital-based services such as surgery, critical care, mental health, orthopedics, pharmacy, radiology and physical therapy"). Here, Viegas was arguably receiving "hospital care" at the time of his injury since it occurred while he was at a VA medical center for prescribed physical therapy. *See Jackson v. Nicholson*, 433 F.3d 822, 826 (Fed. Cir. 2005) ("The term 'hospital care' implies the provision of care by the hospital specifically, as opposed to the broader, more general experience of a patient during the course of hospitalization."). Even if Viegas was not receiving "hospital care" at the time of his injury, however, the physical therapy prescribed to help him manage his quadriplegia would fall under the umbrella of "medical treatment." *See Bartlett v. Shinseki*, 24 Vet. App. 328, 334 n.7 (2011) (explaining that "treatment" is defined as "medical care given to a patient for an illness or injury" (citations and internal quotation marks omitted)); *see also Franks v. Shinseki*, No. 11-2477, 2012 U.S. App. Vet. Claims LEXIS 2339, at *19-25 (Nov. 26, 2012) (concluding that the board erred in rejecting the claim of a veteran seeking section 1151 benefits based upon the VA's failure to provide him with required physical therapy).

liarly within the hospital's control." (citations and internal quotation marks omitted)); *Johnson v. Grant Hosp.*, 291 N.E.2d 440, 446 (Ohio 1972) ("A hospital owes a duty to its patients to exercise such reasonable care for their safety as their known mental and physical condition may require."). Viegas' injury was not, as the government asserts, merely "coincident" with his prescribed physical therapy, but was instead caused by the VA's failure to properly maintain and install the equipment required so that that treatment could take place. *See Bartlett*, 24 Vet. App. at 334-36 (concluding that section 1151 covered an injury incurred as the result of the VA's failure to properly supervise patients hospitalized in a VA psychiatric facility); *see also Sweitzer v. Brown*, 5 Vet. App. 503, 507 (1993) (Mankin, J., dissenting) (emphasizing that when a veteran goes to a VA medical center for examination he remains under the VA's "control and authority while on VA premises" and the VA bears responsibility "for taking all reasonable precautionary measures to assure" his safety).

In *Gardner*, the Supreme Court unanimously rejected the government's efforts to impose limitations on the scope of section 1151 beyond those specifically dictated by Congress. 513 U.S. at 117-20. The previous version of section 1151[3] provided that a veteran was

---

[3]   Prior to a 1996 amendment, section 1151 provided:

Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation . . . or as a result of having submitted to an examination . . . , and not the result of . . . willful misconduct, . . . disability or death compensation

entitled to disability benefits for an injury that occurred "as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation." The VA had interpreted this provision to require that a veteran demonstrate that his additional disability was incurred as the result of "fault" on the part of the VA. *Gardner*, 513 U.S. at 117. The Supreme Court rejected this approach, however, noting that the statutory language contained not "so much as a word about fault." *Id.* (footnote omitted). Instead, the language of section 1151 is most "naturally read simply to impose the requirement of a causal connection between the 'injury' or 'aggravation of an injury' and 'hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation.'" *Id.* at 119.

A similar analysis applies here. Although the government asserts that a veteran's disability must be "directly" caused by the provision of hospital care or medical

---

. . . shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.

Pub. L. No. 85-857, 72 Stat. 1105, 1124 (1958). As will be discussed more fully in section IIC, Congress amended section 1151 in 1996, adding a requirement that the "proximate cause" of a veteran's additional disability must be "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the [VA], in furnishing the hospital care [or] medical or surgical treatment" or "an event not reasonably foreseeable." *See* Departments of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriations Act, Pub. L. No. 104-204, 110 Stat. 2874, 2926-27 (1996).

treatment, section 1151 contains not "so much as a word about" direct causation.  There is simply nothing in the plain language of the statute which requires that an injury be "directly" caused by the medical care provided by VA personnel.  Instead, the statute requires only a "causal connection," *Gardner*, 513 U.S. at 119, between the injuries sustained by the veteran and the hospital care or medical treatment provided by the VA.

*Gardner* makes clear that if there is any ambiguity regarding the prerequisites for compensation under section 1151, "interpretive doubt [must be] resolved in the veteran's favor."  *Id.* at 118.  By its plain terms, section 1151 imposes no requirement that a veteran's additional disability must be "directly" caused by the "actual" provision of hospital or medical care by VA employees.  Even if it were a close case, however, we would be constrained to construe the statute in Viegas' favor. *See, e.g.*, *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) ("This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need.").

## B. JACKSON

In *Jackson*, we interpreted section 1151's causation requirement expansively, noting that "[t]he statute uses broad language and allows for compensation any time there has been an injury that results from 'hospitalization.'"  433 F.3d at 826.[4]  There, a veteran, who was

---

[4]    *Jackson* construed the previous version of section 1151 which, as noted previously, provided for compensation for an injury that was "the result of hospitalization [or] medical or surgical treatment."  As will be discussed more fully in section IIC, the 1996 amendment to the statute substituted the phrase "hospital care" for the word "hospitalization."

hospitalized at a VA medical center for physical therapy and treatment of chronic pain, was injured when she was assaulted by another patient. *Id.* at 823. The government argued that the veteran was not entitled to benefits under section 1151 because her injury was caused by another patient rather than actions of the VA. *Id.* at 824. We rejected this argument, however, explaining "that the fact that a causal connection is required for compensation does not mean that the cause must be VA personnel." *Id.* at 825. Because the veteran would not have been injured had she not been hospitalized, her injury was the "result of [her] hospitalization." *Id.* at 826.

The government points to language in *Jackson* which states that "[w]hereas medical and surgical treatment involve direct involvement with VA staff, hospitalization need not be related to any treatment, but rather is related to the circumstance of being hospitalized." *Id.* at 825. Relying on this language, the government contends that because medical treatment requires direct involvement with VA staff, Viegas' injury, which occurred as a result of an improperly installed restroom grab bar, was not "caused by" his medical treatment. We disagree. There is no dispute that the medical treatment provided by the VA normally "involve[s] direct involvement with VA staff." *Id.* Viegas' physical therapy, for example, presumably involved direct interaction with VA personnel. The fact that VA medical treatment normally involves interaction with VA personnel, however, does not mean that such treatment *only* encompasses the actions of VA employees. If, for example, a veteran who was suffering from an infection visited a VA medical facility and obtained an antibiotic, his "medical treatment" would presumably include not only the actions of the VA physician who prescribed the antibiotic but also the drug itself. Thus, while the medical treatment provided by the VA typically includes "direct involvement with VA staff," *id.*,

this does not mean that it does not also include the medications and equipment necessary to provide such treatment.

## C. THE LEGISLATIVE HISTORY

Section 1151 has a long history, but contains nothing to indicate that Congress intended to preclude compensation for injuries stemming from the VA's failure to properly install and maintain the equipment necessary to provide health care services. *See Gardner v. Brown*, 5 F.3d 1456, 1460 (Fed. Cir. 1993), *aff'd*, 513 U.S. at 115 ("The Secretary must make an extraordinarily strong showing of clear legislative intent in order to convince us that Congress meant other than what it ultimately said."). Prior to 1924, veterans were not eligible for benefits for injuries caused by VA medical care because such injuries were not deemed to be service-connected. *Id.* Pursuant to the World War Veterans' Act of 1924, Pub. L. No. 68-242, § 213, 43 Stat. 607, 623 (the "1924 Act"), however, compensation was provided to those veterans injured "as the result of training, hospitalization, or medical or surgical treatment." Congress repealed the 1924 Act in 1933, but in 1934 replaced it with a similar statute that was designed to apply to all veterans, not simply those who had served in World War I. *See* Act of Mar. 28, 1934, Pub. L. No. 73-141, § 31, 48 Stat. 509, 526 (the "1934 Act"); *see also Hornick v. Shinseki*, 24 Vet. App. 50, 55 (2010). The 1934 Act was amended several times, eventually resulting in the version of section 1151 construed by the Supreme Court in *Gardner*. That iteration of the statute, as noted previously, provided compensation for disabilities which occurred "as the result of hospitalization [or] medical or surgical treatment" provided by the VA. Although the 1924 Act, the 1934 Act and the previous version of section 1151 all required that a veteran's injury occur as a "result" of specified health care services, none contained any indication that the equipment neces-

sary to provide medical care was not encompassed within the scope of the health care services the VA provides.

In 1996, in the wake of *Gardner*, Congress amended section 1151, adding a provision that requires that the "proximate cause" of a veteran's additional disability must be "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the [VA]," or "an event not reasonably foreseeable." 38 U.S.C. § 1151(a)(1). The stated purpose of the amendment was "[t]o provide benefits for certain children of Vietnam veterans who [had been] born with spina bifida, and to offset the cost of such benefits by requiring that there be an element of fault as a precondition for entitlement to compensation for a disability or death resulting from health care or certain other services furnished by the Department of Veterans Affairs." 142 Cong. Rec. S9932 (daily ed. Sept. 5, 1996).

Although the 1996 amendment to section 1151 clearly served to restrict the statute's reach to situations in which a veteran's injury resulted from "fault" on the part of the VA or an unforeseeable "event," there is nothing to suggest that it was intended to impose additional limitations on the statute's original requirement that a veteran's injury must be the result of medical care provided by the VA.[5] In other words, although Congress

---

[5] The 1996 amendment substituted the phrase "caused by" for the phrase "as the result of," but this does not appear to have been a substantive change. *See Gardner*, 513 U.S. at 119 (explaining that the phrase "as the result of" simply "impose[d] the requirement of a causal connection"). Nor is there any indication in the legislative history that substitution of the phrase "hospital care" for the word "hospitalization" was intended to change the statute's scope.

added a second causation requirement to section 1151, requiring a showing of fault on the part of the VA, there is no indication that it intended to impose any additional restrictions on the statute's original causation element. Significantly, the amended version of section 1151 specifies that the "cause[]" of a veteran's injury must be VA hospital care or medical or surgical treatment, but that the "*proximate* cause" of that injury must be the VA's negligence. 38 U.S.C. § 1151(a)(1) (emphasis added); *see K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."). Congress plainly knew how to deploy adjectives when it wished to modify the meaning of the word "cause." If it had wanted to impose a requirement that the "direct" cause of a veteran's injury must be the "actual" medical treatment provided by VA personnel, Congress could readily have inserted such a requirement into the statutory text. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (When "Congress includes particular language in one section of a statute but omits it in another

---

Pursuant to 38 U.S.C. § 1701, which provides definitions of terms for purposes of chapter 17 of Title 38, "[t]he term 'hospital care' *includes* . . . medical services rendered in the course of the hospitalization of any veteran." 38 U.S.C. § 1701(5)(A)(i) (emphasis added). The term "hospital care" also includes benefits such as travel expense reimbursement and services, such as family counseling, for members of the veteran's family. *Id.* § 1705(B). The statute does not limit the term "hospital care" to the care provided by medical professionals. Nor does the statute specifically exclude the care provided to a veteran who receives treatment at a VA medical center, but who is not actually hospitalized as a patient at the facility.

section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citations and internal quotation marks omitted)).

## D. REMOTE CONSEQUENCES

Section 1151 recognizes that a veteran should be compensated when "[t]he Government having undertaken to bestow a benefit, has, in fact, inflicted a loss." *Hearings on H.R. 7320 Before the H. Comm. on World War Veterans' Legislation*, 68th Cong., 1st Sess. 113 (1924). This does not mean, however, that the statute covers every injury sustained by a veteran in a VA medical facility. *Gardner* makes clear that the statute does not extend to the "remote consequences" of the hospital care or medical treatment provided by the VA. 513 U.S. at 119; *see also Roberson*, 607 F.3d at 815-16 (emphasizing that the VA has no responsibility "to insur[e] for every possible condition that a veteran has, even if unrelated to service or VA treatment"). If, for example, a veteran reported to a VA medical center for an examination, and hours later was injured while engaged in recreational activities at the facility, his injury might well be deemed only a "remote consequence" of his earlier examination. Here, however, Viegas' injury was not a "remote consequence" of the treatment he received at the VA's Palo Alto Medical Center, but instead occurred because the VA failed to properly install and maintain the equipment necessary for the provision of his medical care.

## III. CONCLUSION

Accordingly, the judgment of the United States Court of Appeals for Veterans Claims is reversed and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**