NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JESUS RODRIGUEZ,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2015-7037

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 13-2214, Judge Coral Wong Pietsch.

---

Decided: May 18, 2015

---

JESUS RODRIGUEZ, Fort Worth, TX, pro se.

AGATHA KOPROWSKI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., SCOTT D. AUSTIN; Y. KEN LEE, CHRISTINA LYNN GREGG, Office of

General Counsel, United States Department of Veterans Affairs, Washington, DC.

––––––––––––––––––

Before NEWMAN, O'MALLEY, and WALLACH, *Circuit Judges.*

PER CURIAM.

Jesus Rodriguez appeals the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the decision of the Board of Veterans' Appeals ("Board") denying Mr. Rodriguez entitlement to benefits under 38 U.S.C. § 1151 (2012) for a cerebrovascular accident and its residuals. Because the issues raised by Mr. Rodriguez on appeal require the application of law to fact, we dismiss for lack of jurisdiction.

## BACKGROUND

From September 1974 to September 1976, Mr. Rodriguez served on active duty in the United States Army. During service he injured his back and was later granted service connection, rated at fifty percent, for residuals of a fracture of the lumbar spine, effective October 1991.

On May 1, 2000, Mr. Rodriguez was treated at the Fort Worth, Texas, Veterans Administration ("VA") Medical Center for "a heavy feeling in his left hand, dragging of his left leg, and changes in his voice." Resp't's App. 3. The VA physician ordered a computed tomography ("CT") scan and opined that Mr. Rodriguez may have had a cerebrovascular accident ("CVA"). Mr. Rodriguez was sent home but returned the next day complaining of "progressive weakness for the last 3 to 4 days." *Id.* (internal quotation marks and citation omitted). The treating physician noted there was "significant left-side facial weakness" but found the CT scan "unremarkable," *id.*, and ordered a magnetic resonance imaging scan ("MRI") for the next day. The MRI indicated Mr. Rodriguez had

experienced a CVA, and recommended he go to the emergency room in Dallas.

Mr. Rodriguez declined to go to the emergency room in Dallas and instead went to the Huguley Memorial Medical Center in Fort Worth, where he complained he had lost strength in his legs and explaining he had sought treatment in the VA medical center. Mr. Rodriguez was assessed with "a right temporoparietal infarction." *Id.* at 4.

Mr. Rodriguez filed a claim for benefits under 38 U.S.C. § 1151(a),[1] alleging the VA caused his CVA and its residuals by not providing him with prompt diagnosis and care when he went to the VA in May 2000.

---

[1]    Section 1151 of Title 38 provides for "[b]enefits for persons disabled by treatment or vocational rehabilitation."  In relevant part, under the statute, a disability is a "qualifying additional disability" when

> (1) the disability or death was caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary, either by a Department employee or in a Department facility as defined in section 1701(3)(A) of this title, and the proximate cause of the disability or death was

> (A) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination; or

> (B) an event not reasonably foreseeable.

38 U.S.C. § 1151.

In October 2001, the VA Regional Office ("VARO") denied Mr. Rodriguez's claim, finding "his condition was not the result of a failure by VA to timely provide medical care." *Id.* Mr. Rodriguez submitted a Notice of Disagreement and a letter from his private physician stating that he had treated Mr. Rodriguez in early May 2000 after having several episodes of dysarthia and progressive weakness in his left side. *Id.* The private physician also opined that, had he seen Mr. Rodriguez earlier, he would have admitted him to the hospital and considered treatment with intravenous anticoagulates, which would have made possible a complete recovery without any residual deficit.

In August 2002, the VA examined Mr. Rodriguez, and issued a Statement of the Case maintaining its denial of his 38 U.S.C. § 1151 benefits claim. In September 2002, Mr. Rodriguez's disability rating was increased to seventy percent for his back condition, effective June 2000. In October 2002, Mr. Rodriguez was again denied residuals of a CVA. Mr. Rodriguez appealed that decision to the Board, which remanded his claim for additional development. After additional evidence was obtained, the VARO again denied his claim for § 1151 benefits. Mr. Rodriguez appealed that decision and, in May 2005, the Board again denied his claim. In January 2007, after Mr. Rodriguez had again appealed, the parties agreed the previous VA examination had not adequately addressed all of Mr. Rodriguez's VA treatment records from May 2000. Accordingly, the Veterans Court granted the parties' request for a joint remand of the Board's May 2005 decision. Mr. Rodriguez then underwent a VA brain and spinal cord examination in November 2008, and the examiner determined "it was less likely than not that any additional disability associated with [Mr. Rodriguez's] CVA was caused by carelessness, negligence, lack of skill or error in judgment on the part of the VA." *Id.* at 5.

The VARO again denied entitlement in December 2009 and January 2011 to a disability rating over seventy percent for his back condition and denied entitlement to § 1151 benefits for residuals of a CVA.

In January 2012, the Board denied Mr. Rodriguez's claim for an increased rating for his back disability but remanded his § 1151 claim. The Board instructed the VA to determine whether Mr. Rodriguez's CVA residuals (and not the accident itself) were caused by the treatment he received from the VA in early May 2000. The Board also instructed the VA to determine whether, if the residuals were caused by the VA treatment, the proximate cause of the residuals was carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the VA.

In accordance with this directive, Mr. Rodriguez underwent a central nervous system and neuromuscular diseases examination by a new VA physician. That examiner determined his CVA residuals were not a result of the May 2000 VA treatment and noted that the testing conducted on May 1 and 2, 2000, did not indicate Mr. Rodriguez had suffered from a CVA. The examiner also noted that, after Mr. Rodriguez's MRI at the VA on May 3, 2000, indicated a CVA, he was directed to go to the emergency room in Dallas recommended by the treating VA physician, but chose to go to another hospital. Because of these findings, in July 2012, the VA again denied Mr. Rodriguez's § 1151 benefits claim since the evidence failed to demonstrate his CVA residuals were the fault of the VA. In February 2013, after a remand order relating to his back disability claim, the VARO again denied his claim.

Mr. Rodriguez appealed to the Veterans Court, which affirmed the Board's denial of § 1151 benefits for his CVA residuals.

Mr. Rodriguez timely appeals and this court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012).

DISCUSSION

## I. Standard of Review

This court's jurisdiction to review decisions of the Veterans Court is limited by statute.  Pursuant to 38 U.S.C. § 7292(a), this court has jurisdiction to review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the [Veterans] Court in making the decision."  Except to the extent that a constitutional issue is presented, this court may not review "a challenge to a factual determination," or "a challenge to a law or regulation as applied to the facts of a particular case."  *Id.* § 7292(d)(2)(A)–(B).  The Veterans Court's legal determinations are reviewed de novo.  *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009).

## II. This Court Does Not Possess Jurisdiction Over Mr. Rodriguez's Appeal

The Veterans Court explicitly held that the Board's "determination regarding entitlement to compensation under Section 1151 is a factual finding that [the Veterans Court] reviews under the 'clearly erroneous' standard of review."  Resp't's App. 10.  According to the Board, "the examiner was not required to discuss specific evidence or provide reasons or bases for her opinion," contrary to Mr. Rodriguez's arguments below.  *Id.* at 11.  On appeal to this court, Mr. Rodriguez argues the Veterans Court "fail[ed] to direct the [Board[2]] to give back" to Mr. Rodri-

---

[2]    In his Informal Brief, Mr. Rodriguez argues the Veterans Court "fail[e]d to direct the *U.S. Court of Appeals for Veterans Claims* to give [him] his [§] 1151"

guez the § 1151 benefits and asks this court to reverse the Veterans Court. Pet'r's Br. 1. However, Mr. Rodriguez provides no support for his request, and appears to disagree with the Board's factual findings, which this court cannot review.

We have consistently applied 38 U.S.C. § 7292 to strictly bar fact-based appeals from decisions of the Veterans Court. *See, e.g., Ferguson v. Principi*, 273 F.3d 1072, 1076 (Fed. Cir. 2001) ("Because it is clear that the Court of Appeals for Veterans Claims merely *applied* the statute to the facts, its decision falls outside our jurisdiction under the express terms of 38 U.S.C. § 7292(d)(2)."); *Madden v. Gober*, 125 F.3d 1477, 1480 (Fed. Cir. 1997) (This court's jurisdiction is "restricted to entertaining appeals that seek review of the validity of any statute or regulation, or any interpretations thereof, or that raise constitutional controversies.").

To the extent Mr. Rodriguez's appeal can be construed as arguing the Board misapplied § 1151 to the circumstances of his case, he contests the application of law to facts. Under § 1151, a veteran with a qualifying disability is required to show fault on the part of the VA by establishing two elements: (1) the qualifying disability was caused by treatment or care by VA or in a VA facility; and (2) the proximate cause of the disability was "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the [VA], or 'an event not reasonably foreseeable.'" *Viegas v. Shinseki*, 705 F.3d 1374, 1377 (Fed. Cir. 2013); *see also* 38 U.S.C. § 1151 (a)(1)(A)–(B).

---

benefits. Pet'r's Br. 1 ¶4 (emphasis added). We assume he intended to state the Veterans Court failed to reverse the *Board*, and erred in not directing the Board to give him § 1151 benefits.

Here, the Veterans Court determined the Board correctly found Mr. Rodriguez did not show that the "VA physicians failed to exercise the degree of skill and care of a reasonable medical professional" when they treated Mr. Rodriguez because the physician's letter Mr. Rodriguez provided contained no opinion as to the reasonableness of the care provided to him by the VA. Resp't's App. 12. Mr. Rodriguez offers no argument relating to this on appeal, and we discern no error with the Veterans Court's holding. Because this court lacks jurisdiction to review "a challenge to a factual determination" or "a challenge to a law or regulation as applied to the facts of a particular case," 38 U.S.C. § 7292(d)(2), Mr. Rodriguez's appeal is dismissed for lack of jurisdiction.

## CONCLUSION

For the reasons set forth above, the decision of the Veterans Court is

**DISMISSED**

## COSTS

No Costs.