Citation Nr: 1829327 
Decision Date: 05/25/18 Archive Date: 06/12/18

DOCKET NO. 14-30 313 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD) and major depressive disorder.

2. Entitlement to compensation benefits under 38 U.S.C. § 1151 for residuals of a left eye procedure.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

M. C. Wilson, Counsel


INTRODUCTION

The Veteran served on active duty from July 1979 to May 1982.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2013 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin. Jurisdiction over the present matter has since been transferred to the RO in Houston, Texas. In August 2017, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge.

In November 2017, the Board remanded the present matter for further development. Review of the record shows substantial compliance with the remand directives with regard to the claim for compensation benefits under 38 U.S.C. § 1151. However, the Agency of Original Jurisdiction (AOJ) has not complied with the remand directives with regard to the claim for service connection and additional development is required; thus, another remand is necessary with regard to this issue. Stegall v. West, 11 Vet. App. 268 (1998) (a remand by the Board confers on the Veteran, as a matter of law, the right to substantial compliance with the remand).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (2012).

The issue of the Veteran's entitlement to service connection for an acquired psychiatric disorder, to include PTSD and major depressive disorder is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.



FINDINGS OF FACT

1. The competent evidence does not show that the Veteran sustained additional disability as a result of VA carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault; or an event not reasonably foreseeable.

2. The competent evidence does not show that VA delayed treatment of the Veteran's eye condition.


CONCLUSION OF LAW

Compensation benefits under 38 U.S.C. § 1151 for residuals of a left eye procedure are not warranted. 38 U.S.C. § 1151 (2012); 38 C.F.R. § 3.361 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Under certain circumstances, VA provides compensation for additional disability resulting from VA medical treatment in the same manner as if such disability were service-connected. See 38 U.S.C. § 1151 (2012). For a claimant to qualify for such compensation, the additional disability must not be the result of the veteran's willful misconduct, and such disability must be caused by hospital care, medical or surgical treatment, or examination furnished to the veteran under any law administered by the Secretary, either by a Department employee or in a Department facility. 38 U.S.C. § 1151(a). For a claimant to be entitled to compensation when additional disability is caused by VA hospital care, medical or surgical treatment, or examination, the proximate cause of the additional disability must be: (A) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the care, treatment, or examination; or (B) an event not reasonably foreseeable. 38 U.S.C. § 1151(a)(1); 38 C.F.R. § 3.361 (2017).

To determine whether a veteran has additional disability, VA compares the veteran's condition immediately before the beginning of the hospital care, medical or surgical treatment, or examination upon which the claim is based to the veteran's condition after such care, treatment, or examination is completed.

To establish actual causation, the evidence must show that VA hospital care, medical or surgical treatment, or examination resulted in the veteran's additional disability or death. Merely showing that a veteran received care and has an additional disability does not establish cause. 38 C.F.R. § 3.361(c)(1).

The proximate cause of disability or death is the action or event which directly caused the disability or death, as distinguished from a remote contributing cause. 38 C.F.R. § 3.361(d). To establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing hospital care, medical or surgical treatment, or examination proximately caused a veteran's additional disability or death, it must be shown that the hospital care, medical or surgical treatment, or examination caused the veteran's additional disability or death, and that (i) VA failed to exercise the degree of care that would be expected of a reasonable health care provider; or (ii) VA furnished the hospital care, medical or surgical treatment, or examination without the veteran's, or in appropriate cases, his representative's, informed consent. 38 C.F.R. § 3.361(d)(1).

Whether the proximate cause of a veteran's additional disability or death was an event not reasonably foreseeable is to be determined based on what a reasonable health care provider would have foreseen. The event need not be completely unforeseeable or unimaginable but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures of 38 C.F.R. § 17.32. 38 C.F.R. § 3.361(d)(2).

In addition, entitlement to benefits based on the failure to diagnose a preexisting condition requires a determination that: (1) VA failed to diagnose or treat a preexisting disease or injury; (2) a physician exercising the degree of skill and care ordinarily required of the medical profession reasonably should have diagnosed the condition and rendered treatment; and (3) the veteran suffered a disability that probably would have been avoided if the proper diagnosis and treatment had been rendered. 38 U.S.C. § 1151; Roberson v. Shinseki, 607 F.3d 809, 816-17 (Fed. Cir. 2010).

Here, during his August 2017 Board hearing, the Veteran reported that he went blind in his left eye due to a procedure that was performed at a VA medical center. More specifically, he reported that a December 2004 procedure that was undertaken to treat his glaucoma was performed incorrectly and/or that VA delayed treatment of a serious eye issue for too long.

A May 2013 medical opinion documents the relevant history of the Veteran's left eye disability. The Veteran presented with pain in the left eye and was found to have phakic pupillary block glaucoma in December 2004. At that time, the Veteran reported having poor vision in the left eye for the past six months and had not been using any anti-glaucoma drops or medications up until that point. Additionally, per the records, the Veteran was informed that he had glaucoma one year prior and surgery was recommended, but the Veteran was non-compliant and never returned for follow-up treatment. Upon the Veteran's presentation in December 2004, VA performed a laser peripheral iridotomy to normalize the intraocular pressure in his eyes-the procedure that the Veteran asserts caused his current left eye disability.

The reporting ophthalmologist concluded that left eye blindness was not caused by or a result of VA treatment, as it was most likely caused by and a result of the Veteran's own willful misconduct and noncompliance with treatment recommendations and the Veteran's failure to follow up with his doctor prior to December 2004. See May 2013 VA Disability Benefits Questionnaire. The reporting ophthalmologist did not address whether the Veteran's current disability was reasonably foreseeable, whether the December 2004 procedure was performed incorrectly, or whether VA delayed treatment of a serious eye issue for too long.

In March 2018, another ophthalmologist opined that the December 2004 Surgery was less likely than not the cause of the Veteran's left eye blindness. The examiner explained that the veteran was advised sixth months before his glaucoma surgery in December 2004 that he had a retinal detachment and needed to have it fixed, he did not keep his surgery day to fix his detachment, and he presented to the VA with a secondary angle closure glaucoma six months later, at which time surgery was performed to relieve his glaucoma. In addition, he had a longstanding open angle glaucoma and he was not compliant in using his eye drops.

According to the examiner, it is less likely than not that the identified residuals are due to carelessness, negligence, lack of proper skill, error in judgement, or similar instance of fault on the part of the VA in furnishing the hospital care, medical or surgical treatment, or examination. The Veteran was informed of the risks and benefits of surgery and proper precautions were taken. He was also referred to a retina surgeon so his detachment could be fixed, however, the Veteran did not have this done. The Veteran only used eye drops for a few weeks and did not return for further treatment, which is documented in December 2004 records.

Additionally, it is less likely than not that the Veteran's development of the identified residuals was an event not reasonably foreseeable. Developing the identified residual was the type of risk that a reasonable health care provider would have disclosed in connection with informed consent procedures. Reasonable care was taken by the staff and nothing more can be done if a veteran does not want care. The examiner reiterated that the Veteran was informed of a retina detachment in the operative eye at least six months before his glaucoma surgery and did nothing about it. The VA staff had a retina specialist evaluate the eye and schedule him for surgery in an attempt to save the vision in that eye, but the Veteran did not proceed with the surgery.

It is also less likely than not that the VA clinician, exercising the degree of skill and care ordinarily required of the medical profession reasonably should have diagnosed the condition and rendered treatment at an earlier date and it is less likely than not that the VA failed to timely diagnose or treat the Veteran's condition. The veteran had anatomical narrow angles in both eyes and open angle glaucoma in both eyes. The Veteran refused early surgery that may have prevented the unfortunate outcome for his eye. The retina detachment and the inconsistent use of his eye drops made it unlikely that his vision could be saved. The iridectomy that was performed was a success; it relieved his pain and brought his intraocular pressure down. Notably, the veteran was diagnosed with a major ophthalmic problem six months before he had problem with pressure in his eye. According to the Veteran, his eyes were not his priority at that time.

Additionally, it is less likely than not that the December 2004 laser peripheral iridotomy was performed incorrectly, as there is no evidence to suggest the procedure was performed incorrectly. The consent procedures, pre-operative care, and post-operative care meets the standard of care. The Veteran was relieved of his symptoms and there appears to be no evidence of problems with the procedure. He was informed and there is no evidence of complications.

The Board finds that the foregoing medical opinions, when reviewed together, are adequate because the examiners reviewed the Veteran's relevant medical history and offered clear opinions regarding the relationship between the Veteran's condition and his VA treatment. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007).

The Veteran reported in August 2014 that he intended to present evidence from an ophthalmologist that supports his claim, but he did not provide this information and did not respond to VA's request for authorization to obtain this information. See August 2014 VA Form 9; November 2017 VA development letter (asking the Veteran for authorization to obtain records from his private ophthalmologist).

Thus, based on the foregoing, the Board finds that the record is negative for competent evidence that the Veteran sustained additional disability as a result of VA carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault; or an event not reasonably foreseeable. Additionally, the evidence does not show that VA delayed treatment of the Veteran's eye condition.

Although the Veteran has asserted that compensation is warranted, the Board finds that he is not competent to provide evidence regarding matters as complex as determining what degree of care is expected of a reasonable healthcare provider. See Layno v. Brown, 6 Vet. App. 465, 469-70 (1994) (a claimant is competent to report on that of which he or she has personal knowledge). Accordingly, the appeal is denied. There is no doubt to be resolved. 38 U.S.C. § 5107(b) (2012); 38 C.F.R. § 3.102 (2017); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Compensation benefits under 38 U.S.C. § 1151 for residuals of a left eye procedure are denied.


REMAND

The record indicates that the Veteran has been diagnosed with various psychiatric disorders throughout the appeal period, to include major depressive disorder, anxiety disorder, and substance abuse, and he has asserted that his psychiatric symptoms had their onset during his period of active service. As noted in the Board's November 2017 remand, an October 1981 service treatment record (STR) documents possible use of the drug Antabuse (or disulfiram), which is used to produce an aversion to alcohol in the treatment of chronic alcoholism. See Dorland's Illustrated Medical Dictionary 97, 557-58 (32nd ed. 2012).

On remand, the AOJ was charged with providing an examination to identify all psychiatric disorders diagnosed during the period on appeal (or since May 2011), specifically rule in or exclude a diagnosis of PTSD under either DSM-IV or DSM-5 criteria, and provide an opinion as to whether it is at least as likely as not that an identified disorder had its onset during his period of active service, had its onset within one year of his discharge from active service, or was otherwise caused by his active service. In providing the requested opinion, the examining clinician was asked to address the significance of the October 1981 STR that documented possible use of the drug Antabuse (or disulfiram).

VA provided an examination and obtained a medical opinion in January 2018, at which time the Veteran was diagnosed with a polysubstance use disorder and substance-induced mood disorder, but the examiner failed to address the pertinent October 1981 STR and did not provide an opinion as to whether other disorders that were diagnosed since May 2011, such as major depressive disorder, are related to the Veteran's period of active service. In light of the foregoing, the January 2018 opinion is inadequate. A remand is necessary to obtain an adequate opinion regarding the likely etiology of the Veteran's claimed acquired psychiatric disorder. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); Stegall, 11 Vet. App. at 268. To the extent that the reviewing clinician finds that a previous diagnosis was incorrect or invalid, (s)he should explain the underlying reasoning for that conclusion in sufficient detail.

Additionally, the Board notes that VA treatment records indicate that the Veteran participated in a drug detoxification/rehabilitation program at a VA facility in Kerrville in 1996. See January and November 2004 VA treatment records. These records should be associated with the claims file on remand. 38 U.S.C. § 5103A(c) (2012); 38 C.F.R. § 3.159(c) (2017).

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Associate with the claims file records of the Veteran's participation in a drug detoxification /rehabilitation program at a VA facility in Kerrville in 1996. In addition, recent VA treatment records and any other pertinent records identified by the Veteran during the course of the remand should be obtained and associated with the claims file. If any records requested by VA are not available, this should be indicated in the file.

2. Notify the Veteran that he may submit lay statements from himself and from other individuals who have first-hand knowledge, and/or were contemporaneously informed his in-service and post-service psychiatric symptoms. The Veteran should be provided an appropriate amount of time to submit this lay evidence.

3. After completing the development requested above, obtain an addendum medical opinion from the psychiatrist who examined the Veteran in January 2018 or another appropriate clinician regarding the nature and etiology of the Veteran's psychiatric disability, to include PTSD, major depressive disorder, and any other identified psychiatric disorder that has been identified since May 2011. A diagnosis of PTSD must be ruled in or excluded. The Veteran's claims file should be made available to and be reviewed by the reviewing clinician, and he or she must indicate whether such review was accomplished.

 (a) Identify all psychiatric disorders diagnosed during the appeal period (or since May 2011), to include major depressive disorder and anxiety disorder. Please state whether the Veteran met the criteria for a diagnosis of PTSD under either DSM-IV or DSM-5 criteria at any time during the appeal period. To the extent that the reviewing clinician finds that a previous diagnosis was incorrect or invalid, (s)he must explain the underlying reasoning for that conclusion in sufficient detail.

 (b) For each disorder identified in (a), provide an opinion as to whether it is at least as likely as not that the disorder had its onset during his period of active service (July 1979 to May 1982). In providing the requested opinion, please address the significance of an October 1981 service treatment record that documents possible use of the drug Antabuse (or disulfiram).

 (c) For each disorder identified in (a), provide an opinion as to whether it is at least as likely as not that it had its onset within one year of the Veteran's May 1982 discharge from his period of active service.

 (d) For each disorder identified in (a), provide an opinion as to whether it is at least as likely as not that it was caused by his period of active service (July 1979 to May 1982).

All findings, conclusions, and the rationale for all opinions expressed should be provided in a report, which must reflect the reviewing clinician's consideration and analysis of both the medical and lay evidence of record, to include the Veteran's report that he has experienced psychiatric symptoms since service. 

Please note that a reviewing clinician's report that (s)he cannot provide an opinion without resort to speculation is inadequate unless the clinician provides a rationale for that statement.

4. Readjudicate the claim on appeal. If any of the benefits sought remain denied, issue the Veteran and his representative a Supplemental Statement of the Case and allow for a reasonable period for response.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).





______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs