# United States Court of Appeals
# for the Federal Circuit

———————————

**PAUL L. OLLIS,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

———————————

2016-1315

———————————

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-1680, Judge Bruce E. Kasold, Judge Coral Wong Pietsch, Judge William Greenberg.

———————————

Decided: May 26, 2017

———————————

PAUL MICHAEL SCHOENHARD, McDermott, Will & Emery LLP, Washington, DC, argued for claimant-appellant. Also represented by DARRELL STARK, Ropes & Gray LLP, Washington, DC; SAMUEL LAWRENCE BRENNER, Boston, MA.

LOREN MISHA PREHEIM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E.

KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.; MARTIE ADELMAN, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before DYK, REYNA, and STOLL, *Circuit Judges.*

DYK, *Circuit Judge.*

Paul Ollis, a veteran, brought a claim for disability benefits under 38 U.S.C. § 1151, a section that requires the Department of Veterans Affairs ("VA") to pay benefits for certain injuries incurred as a result of VA medical care. Mr. Ollis suffers from atrial fibrillation and claims a disability resulting from complications of a heart procedure to treat that condition. The procedure (called mini-MAZE) was allegedly recommended by a VA doctor but was performed by a private doctor. The VA denied Mr. Ollis's application for benefits, and both the Board of Veterans' Appeals and the Court of Appeals for Veterans Claims ("Veterans Court") affirmed. We affirm in part and vacate and remand in part.

## BACKGROUND

Mr. Ollis was diagnosed with atrial fibrillation in 1997. He had a surgical ablation procedure to treat that condition in 1999 at a VA facility in Nashville, Tennessee, and had a pacemaker put in later that same year. The ablation procedure proved unsuccessful in treating his condition. Afterwards, he continued to receive care from the VA and from Dr. Teague, a private cardiologist.

During a 2007 check-up conducted by the VA, Mr. Ollis met with a nurse practitioner and inquired

about a MAZE procedure[1] for his heart to treat his atrial fibrillation. His VA cardiologist, Dr. Rottman, later reviewed Mr. Ollis's file and noted that "[s]ur[gi]cal MAZE is one avail[a]ble option" and that "epicardial MAZE would be the current preference." J.A. 2. Epicardial MAZE is also known as minimally invasive MAZE or mini-MAZE. Since the VA facility did not have the specialized equipment and operators for a mini-MAZE procedure, Dr. Rottman noted that "it could be performed at other local institutions" and indicated that "[r]ecommendations [were] provided." J.A. 2, 80. Before the Board, Mr. Ollis was asked: "did the V.A. recommend that you have the procedure or did—or did they simply advise you that a procedure was available?," to which he responded that the VA "recommended that I have the procedure because of my age" and "they thought I could handle it a lot better than somebody at the age of seventy." J.A. 144. There is no suggestion, however, that Dr. Rottman recommended Dr. Hall, the private cardiologist who later performed Mr. Ollis's procedure, or Methodist Medical Center, the medical facility in which Dr. Hall performed it.

Mr. Ollis then saw his private cardiologist, Dr. Teague, and they discussed the different medical procedures that were available. Dr. Teague referred him to Dr. Hall, another private cardiologist, for further evaluation for a mini-MAZE procedure. In his progress

---

[1]  As the Veterans Court explained, a "'Maze' procedure is the 'surgical division of the normal conduction pathways between the sinoatrial node and the atrioventricular node by a series of incisions in the left atrium to create a maze of conduction pathways; its purpose is to allow a normal impulse to activate the atrium while eliminating macroreentrant circuits; done for the relief of atrial fibrillation.'" J.A. 2 n.6 (quoting Dorland's Illustrated Medical Dictionary 1517 (32d ed. 2012)).

notes, Dr. Hall stated: "We appreciate Dr. Teague asking us to see this patient." J.A. 64. Dr. Hall performed the procedure in August 2007 at the Methodist Medical Center, paid for by Mr. Ollis and his private medical insurance.[2] Mr. Ollis asserts that his phrenic nerve was damaged during the procedure. He claims that this phrenic nerve damage resulted in paralysis of his diaphragm, causing shortness of breath and decreased lung function.

There is no indication that Mr. Ollis asserted a claim for damages against Dr. Hall or the hospital where Dr. Hall performed the procedure. Instead, Mr. Ollis filed for disability benefits under 38 U.S.C. § 1151. That section requires the VA to provide benefits for a "qualifying additional disability . . . in the same manner as if [it] were service-connected." § 1151(a). Under § 1151(a),

> [A] disability or death is a qualifying additional disability or qualifying death if the disability or death was not the result of the veteran's willful misconduct and—
>
> > (1) *the disability or death was caused by* hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary, either by a Department employee or in a Department facility as defined in section 1701(3)(A) of this title, and *the proximate cause of the disability or death was—*
> >
> > > (A) carelessness, negligence, lack of proper skill, error in judgment,

---

[2]    Since the procedure was performed by a private doctor, in a non-VA facility, and paid for by private insurance, we are not dealing with a situation where a private physician acts as an agent of the VA.

> or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination; or
>
> (B) an event not reasonably foreseeable . . . .

*Id.* (emphasis added).

The Veterans Court affirmed the denial of Mr. Ollis's application because his injury was not caused by VA medical care since, under our decision in *Viegas v. Shinseki*, 705 F.3d 1374 (Fed. Cir. 2013), it was too attenuated from VA conduct. The Veterans Court noted that "Dr. Hall, a non-VA employee, performed the disabling surgery in a non-VA facility, and [there was] no contractual or agency relationship between VA and Dr. Hall." J.A. 8. The Veterans Court also found no due process right to notice that referral to a private doctor could affect benefits under § 1151(a). A dissent emphasized that a VA doctor had recommended a particular course of treatment to Mr. Ollis (the mini-MAZE procedure) and concluded that it was not a remote consequence for him to pursue that course of treatment. The dissent also disagreed with the majority's due process determination.

Mr. Ollis petitions for review. We have jurisdiction under 38 U.S.C. § 7292.

## DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is limited by statute. 38 U.S.C. § 7292. We "decide all relevant questions of law, including interpreting constitutional and statutory provisions," *id.* § 7292(d)(1), and our review of these questions is de novo, *e.g.*, *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009). But, except to the extent that an appeal presents a constitutional issue, we "may not review (A) a challenge to a

factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). If the decision by the Veterans Court is not in accordance with law, we can reverse, modify, or remand. *Id.* § 7292(e)(1).

I

Section 1151 has a long history and is used "typically to provide benefits to veterans for nonservice related disabilities" resulting from VA medical care. *Brown v. Gardner*, 513 U.S. 115, 116 n.1 (1994), *abrogated in part by statute*, Pub. L. No. 104-204, § 422(a), 110 Stat. 2874, 2926–27 (1996); *see also Viegas*, 705 F.3d at 1381–82. The provision originated with the World War Veterans' Act, 1924, Pub. L. No. 68-242, § 213, 43 Stat. 607, 623. The provision was amended several times thereafter and renumbered in 1991. *See* Department of Veterans Affairs Codification Act, Pub. L. No. 102-83, §§ 4(a)(1), 5(a), 105 Stat. 378, 403, 406 (1991). The 1991 version was reviewed by the Supreme Court in *Gardner*. Throughout its various iterations, including the version at issue in *Gardner*, the provision provided benefits if a veteran "suffered an injury, or an aggravation of an injury, as the result of hospitalization, [or] medical or surgical treatment." 38 U.S.C. § 1151 (1994); 38 U.S.C. § 351 (1982); 38 U.S.C. § 351 (1958); *see* 38 U.S.C. § 501 (1934).

Since at least as early as 1938, VA regulations interpreting the provision had required fault by the VA. The regulations provided that "[c]ompensation is not payable for either the usual or the unusual after results of approved medical care properly administered, in the absence of a showing that the disability proximately resulted through carelessness, accident, negligence, lack of proper skill, error in judgment, etc." 38 C.F.R. § 2.1123(c)(4) (1938); *see also* 38 C.F.R. § 3.123 (1956). In 1961, VA altered this language to provide that "the disability proximately resulted through carelessness, accident,

negligence, lack of proper skill, error in judgment, *or similar instances of indicated fault on the part of the* [*VA*]." Pensions, Bonuses, and Veterans' Relief, 26 Fed. Reg. 1561, 1590–91 (Feb. 24, 1961) (emphasis added). VA also amended the regulations to make explicit that the "as the result of" language in the statute is a "cause" requirement. *Id.*

An opinion by VA's General Counsel in 1978 then opined that the fault requirement in the regulations was in error with respect to "accidents." U.S. Dep't of Veterans Affairs, Op. Gen. Counsel 2-78 (Oct. 25, 1978). After analyzing the legislative history of the provision and the development of VA regulations implementing it, the opinion concluded that Congress had intended recovery for a disability deriving from *either* an accident or some form of negligence or fault by VA. The opinion also made clear that an accident would not encompass "expected or contemplated risks of surgery, no matter how remote." *Id.* at 5. Accordingly VA amended the regulations to provide that:

> Compensation is not payable for either the contemplated or foreseeable after results of approved medical or surgical care properly administered, no matter how remote, in the absence of a showing that additional disability or death proximately resulted through carelessnes[s], negligence, lack of proper skill, error in judgment, or similar instances of indicated fault on the part of the Veterans' Administration. However, compensation is payable in the event of the occurrence of an "accident" (an unforeseen, untoward event), causing additional disability or death proximately resulting from Veterans' Administration hospitalization or medical or surgical care.

*Ratings for Special Purposes*, 43 Fed. Reg. 51,015 (Nov. 2, 1978) (final regulation); *see also Ratings for Special*

*Purposes*, 43 Fed. Reg. 34,505 (Aug. 4, 1978) (proposed rulemaking). In proposing this change to the regulation, VA made clear that compensation predicated on an unforeseeable event would not extend to expected or normal risks of VA medical care unless there was a showing of fault by the VA. *See* 43 Fed. Reg. 34,505. The amended regulation, 38 C.F.R. § 3.358(c)(3) (1993), was the version at issue in *Gardner*.

In *Gardner*, the Supreme Court addressed whether this regulation, by requiring some level of fault by the VA (except for unforeseeable events), was consistent with the governing text of § 1151, which only required that the "injury" occur "as the result of" hospitalization or medical treatment. 513 U.S. at 117–20. The Court held that neither the "injury" nor "as the result of" language contemplated an element of fault by the VA, and that "it would be unreasonable to read the text of § 1151 as imposing a burden of demonstrating [fault] upon seeking compensation." *Id.* at 120.

In analyzing the "as the result of" language, the Court concluded that it "is naturally read simply to impose the requirement of a causal connection between the 'injury' or 'aggravation of an injury' and 'hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation.'" *Id.* at 119. The Court noted that if the causal connection was meant to require "proximate causation so as to narrow the class of compensable cases, that narrowing occurs by eliminating remote consequences, not by requiring a demonstration of fault." *Id.*

After the Supreme Court's decision in *Gardner*, in 1996 Congress amended § 1151. *See* Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1997, Pub. L. No. 104-204, § 422(a), 110 Stat. 2874, 2926–27 (1996). In many ways, Congress adopted the prior VA regulation, abrogated the decision in *Gardner*, and explicitly required

an element of fault by the VA or an unforeseeable event. First, Congress altered the "as the result of" language in § 1151, but still maintained the basic requirement of a causal connection between the disability and VA treatment or care—*i.e.*, "the disability or death *was caused by* hospital care, medical or surgical treatment, or examination furnished the veteran . . . by a [VA] employee or in a [VA] facility." *Id.* (emphasis added).

Second, Congress added a requirement that "the *proximate cause* of the disability or death was . . . carelessness, negligence, lack of proper skill, error in judgment, or similar instances of fault on the part of the [VA] . . . [or] an event not reasonably foreseeable." *Id.* (emphasis added).

More recently, in *Viegas* we considered the causation requirement of § 1151. There, the veteran went to a prescribed aquatic therapy session in a VA facility and subsequently sustained an injury when the grab bar in one of the restrooms came loose from the wall when he attempted to use it. 705 F.3d at 1376. We reversed a decision by the Veterans Court that had denied compensation, holding that, even though Congress replaced "as the result of" with "caused by," the cause requirement remained substantively unchanged. *Id.* at 1382. The panel found "no indication that [by amending § 1151, Congress] intended to impose any additional restrictions on the statute's original causation element." *Id.* at 1382. The *Viegas* decision further reaffirmed that under *Gardner* this cause requirement means that coverage "does not extend to the 'remote consequences' of the hospital care or medical treatment provided by the VA." *Id.* at 1383. But *Viegas* held that the veteran's injury from the faulty grab bar was not a remote consequence of VA medical treatment since using the restroom is part of medical care and the injury stemmed from VA's failure "to properly install and maintain the equipment necessary for the provision of his medical care." *Id.*

II

The question presented in this case is how to construe the statutory requirements of § 1151 when the disability-causing event occurred during a medical procedure not performed by a VA doctor or in a VA facility. More specifically, we consider the application of § 1151 to referral situations.

A. Negligence by VA

A theory of recovery under § 1151 based on negligence by the VA is straightforward. *See* § 1151(a)(1)(A). The claimant must show: (1) a causal connection between the disability and "hospital care, medical or surgical treatment, or an examination furnished the veteran . . . by a [VA] employee or in a [VA] facility," and (2) that "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the [VA]" was "the proximate cause of the disability." § 1151(a)(1).

Thus, this theory incorporates the fault element rejected by the Supreme Court in *Gardner* but subsequently added by Congress when it amended § 1151. The standard for recovery is similar to the usual standard used for medical malpractice cases. It requires that VA medical care actually cause the claimant's disability (a traditional but-for causation requirement, as opposed to the disability stemming from "willful misconduct" or the natural progress of the claimant's preexisting disease, injury, or condition, *see* 38 C.F.R. § 3.361(c)), and that, in providing such care, VA's failure "to exercise the degree of care that would be expected of a reasonable health care provider" proximately caused the disability. 38 C.F.R. § 3.361(d)(1)(i); *see also, e.g.*, 1 David W. Louisell & Harold Williams, Medical Malpractice § 8.07; 1 Steven E. Pegalis, American Law of Medical Malpractice §§ 3:1, 5:1 (3d ed. 2016).

The proximate cause requirement of § 1151(a)(1)(A) applicable to VA-fault claims thus incorporates traditional tort law notions of proximate cause. While the precise meaning and formulation of proximate cause in tort law is subject to significant debate, its purpose is generally understood to limit an actor's legal responsibility. *See* Black's Law Dictionary 265 (10th ed. 2014) (defining "proximate cause" as "[a] cause that is legally sufficient to result in liability"); Dan B. Dobbs et al., The Law of Torts § 198 (2d ed. 2016 update). Proximate cause limits legal responsibility to "those [but-for] causes which are so closely connected with the result . . . that the law is justified in imposing liability." W. Page Keeton et. al., Prosser & Keeton on Torts § 41, at 264 (5th ed. 1984); *see also Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014) ("Every event has many causes . . . [s]o to say that one event was a proximate cause of another means that it was not just any cause, but one with a sufficient connection to the result.").

As the Supreme Court has recognized, a hallmark formulation of proximate cause defines its scope in terms of foreseeability, extending only to those foreseeable risks created by the negligent conduct. *See Paroline*, 134 S. Ct. at 1719 ("Proximate cause is often explicated in terms of *foreseeability* . . . .") (emphasis added); *see also* Dobbs et al., § 198 ("The most general and pervasive approach to . . . proximate cause holds that a negligent defendant is liable for all the general kinds of harms he *foreseeably* risked by his negligent conduct and to the class of persons he put at risk by that conduct.") (emphasis added); Keeton et. al., § 42, at 273 ("[T]he scope of liability should ordinarily extend to but not beyond the scope of the '*foreseeable* risks'—that is, the risks by reason of which the actor's conduct is held to be negligent.") (emphasis added).

Before the Veterans Court, Mr. Ollis suggested various theories of fault under § 1151(a)(1)(A), including that his VA doctors may have been negligent by recommending

the mini-MAZE procedure to him, or by referring him to a particular doctor who negligently performed the mini-MAZE procedure. The Veterans Court found no "evidence indicating that Dr. Hall was not qualified to perform the MAZE procedure or that VA medical personnel were negligent in any recommendation regarding who might be able to perform the MAZE procedure." J.A. 9. Even if Mr. Ollis could meet the cause requirement of § 1151(a)(1), the Veterans Court found Mr. Ollis's arguments regarding VA fault for negligent referral to a particular doctor under § 1151(a)(1)(A) to be "speculative at best," *i.e.*, that there was no proximate cause between VA negligence and the injury, *id.*, and we see no legal error in that analysis. The question remains, however, whether Mr. Ollis's VA medical doctors were negligent under § 1151(a)(1)(A) by recommending the mini-MAZE procedure to him, and we remand for consideration of this question.

### B. Event Not Reasonably Foreseeable

A theory of recovery under § 1151(a)(1)(B) in the referral context presents a more difficult interpretive question. In order to resolve this case, it is necessary to construe several terms of the statute insofar as they apply to § 1151(a)(1)(B): (1) "not reasonably foreseeable"; (2) "proximate cause of the disability or death"; and (3) "caused by."

"[N]ot reasonably foreseeable." Current VA regulations indicate that, for an event to qualify as an event not reasonably foreseeable, it must be judged not reasonably foreseeable at the time of the disability-causing event—in this case, performance of the mini-MAZE procedure—not at some earlier point in time such as referral or recommendation by the VA. The regulations make this clear that an event not reasonably foreseeable "must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provid-

ed" and not "the type of risk that a reasonable health care provider would have disclosed in connection with . . . informed consent." 38 C.F.R. § 3.361(d)(2). The Veterans Court did not address this question of whether the lack of foreseeability requirement was satisfied here.

"[P]roximate cause of the disability or death." Under § 1151(a)(1)(B), the "proximate cause of the disability or death" language performs a limited function. The veteran need only show that the disability or death was proximately caused by the unforeseeable event, and a showing of fault is not required. One could envisage a situation in which an unforeseeable event is not the proximate cause of a disability, for example, if phrenic nerve severance would not foreseeably cause shortness of breath and decreased lung function. But there is no contention here that is the case. It is also equally clear that an unforeseeable event such as phrenic nerve severance can be the proximate cause of the disability, meaning that the proximate cause requirement of § 1151(a)(1)(B) would be satisfied. Again, the Veterans Court did not address this requirement.

"[C]aused by." But even if Mr. Ollis can satisfy the proximate cause requirement of § 1151(a)(1)(B), the cause requirement of § 1151(a)(1) remains. The government argues that the cause requirement in § 1151(a)(1) includes at least some lesser proximate causation. To the extent the government argues and the Veterans Court concluded that VA medical care must proximately cause a claimant's disability, that is inconsistent with § 1151(a)(1)(B) and would render it a nullity. By definition a claimant cannot show that an injury that is unforeseeable was proximately caused by VA medical care.

At the same time, we are convinced that Congress did not contemplate a mere but-for cause analysis under this requirement. From the background of the statute, it seems quite clear that Congress intended some concept of

remoteness to be inherent in the cause requirement of § 1151(a)(1). We explained as much in *Viegas*, concluding that "the statute does not extend to the 'remote consequences' of the hospital care or medical treatment provided by the VA." 705 F.3d at 1383. As *Viegas* recognized, this cause requirement might not be satisfied "[i]f, for example, a veteran reported to a VA medical center for an examination, and hours later was injured while engaged in recreational activities at the facility, [since] his injury might well be deemed only a 'remote consequence' of his earlier examination." *Id.*

Thus, we think that cause under § 1151(a)(1) incorporates some remoteness requirement. This remoteness requirement is the same as the traditional proximate cause requirement but without fault and applicable to a limited sequence of events. *See Gardner*, 513 U.S. 119 ("Assuming that the [causal] connection is limited to *proximate causation* so as to narrow the class of compensable cases, that narrowing occurs by eliminating remote consequences . . . ." (emphasis added)). It is, in other words, a lesser proximate cause requirement. As discussed earlier, the basis for recovery under § 1151(a)(1)(B)—*i.e.*, an event not reasonably foreseeable—indicates that the statute cannot require proximate causation between VA medical treatment and the disability. By definition an unforeseeable event cannot be proximately connected to medical treatment. Causation, however, requires that VA medical treatment proximately cause the treatment that caused the disability—*i.e.*, that it caused the mini-MAZE procedure. Here, in other words, only the performance of the mini-MAZE procedure and not the nerve severance or the resulting shortness of breath and decreased lung function must be proximately caused by VA medical treatment to satisfy the cause requirement in § 1151(a)(1).

Mr. Ollis seeks to draw a chain of causation that includes the recommendation provided by a VA doctor that

ultimately led Mr. Ollis to see Dr. Hall, the private cardiologist who actually performed the mini-MAZE procedure that damaged his phrenic nerve and caused his disability.[3] The question remains whether VA medical care proximately caused the mini-MAZE procedure, a question not addressed by the Veterans Court.

### III

Accordingly, when recovery is predicated on a referral theory involving an unforeseeable event under § 1151(a)(1)(B), § 1151(a)(1) requires that VA medical care proximately cause the medical treatment or care (here, the mini-MAZE procedure) during which the unforeseeable event occurred (here, the severance of the phrenic nerve). Section 1151(a)(1)(B) further requires that the unforeseeable event—phrenic nerve damage—proximately cause the disability. As such, the chain of causation has two components (neither of which requires fault)—*i.e.*, proximate cause between VA medical care and the treatment, and proximate cause between the unforeseeable event and the disability.

To some extent the Veterans Court appears to have confused the cause and proximate cause requirements of § 1151(a)(1) and § 1151(a)(1)(A)–(B). *See* J.A. 8 n.8 ("*Viegas* . . . addresses causation and . . . is consistent with the general interpretation of 'proximate cause' . . . ."). Specifically, the Veterans Court made two legal errors in this aspect of its analysis. First, it framed the question as whether Mr. Ollis's *disability* was a remote consequence of VA medical treatment, whereas the correct inquiry under § 1151(a)(1)(B) is whether *the medical procedure* was a remote consequence of VA medical treatment—*i.e.*, whether VA medical treatment proximately caused

---

[3]    As noted earlier, this is not a case where a private doctor acted as an agent of the VA.

Mr. Ollis to undergo *the mini-MAZE procedure. See* J.A. 7–8 ("Mr. Ollis's *disability* was, at best, *a remote consequence of—and not caused by*—VA's conduct.") (emphasis added); *id.* at 8 ("[T]he conduct of VA's Dr. Rottman . . . is simply *too remote from Mr. Ollis's disability* to be considered its cause.") (emphasis added). Second, the Veterans Court focused on the question whether VA medical treatment caused Mr. Ollis to utilize Dr. Hall and Methodist Medical Center, rather than on whether VA medical treatment caused him to have the mini-MAZE procedure itself. The Veterans Court's decision did not analyze this case under that framework, and a remand is required. On remand, the Veterans Court must also address the not reasonably foreseeable and proximate cause of the disability or death requirements.

IV

Lastly, Mr. Ollis argues that VA's failure to provide him notice that a referral to a private facility for his mini-MAZE procedure could extinguish his eligibility for benefits under § 1151(a) constitutes a violation of his right to due process. Specifically, Mr. Ollis relies on *Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009), to argue that he has a protected property interest in his *right to coverage* under that provision should he meet the requirements, and the lack of notice violated the basic requirements of due process—notice and a fair opportunity to be heard.[4]

---

[4]    Before the Veterans Court, Mr. Ollis also relied on the language of 38 U.S.C. § 6303(c)(1)(A) that the VA "shall distribute full information to eligible veterans . . . regarding all benefits and services to which they may be entitled" to support his due process claim. But we have previously held this language to be only hortatory (*see Andrews v. Principi*, 351 F.3d 1134, 1137 (Fed. Cir. 2003)), and Mr. Ollis does not raise this statutory argument on appeal.

The Veterans Court held that there was no due process violation.

In *Cushman* we held that entitlement to veterans' disability benefits is a protected property interest since such benefits are nondiscretionary and mandated by statute. *Id.* at 1298. There, VA's reliance on an improperly altered medical record in adjudicating the veteran's claim for monetary benefits constituted a due process violation. *Id.* at 1300. As such, *Cushman* addressed the adequacy of the adjudication procedure. There is no due process right to notice regarding conditions that might in the future affect an individual veteran's right to monetary benefits (a right that is governed by statute and regulation) before the veteran incurs an injury or applies for such benefits.[5] *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972) ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits."); *see also Devlin v. Office of Pers. Mgmt.*, 767 F.3d 1285, 1288 (Fed. Cir. 2014) (holding that an application is necessary for Basic Employee Death Benefits before there is a protected property interest). Accordingly, we affirm the Veterans Court's decision on Mr. Ollis's due process claim.

## CONCLUSION

We affirm in part and vacate in part the decision by the Veterans Court and remand for consideration in light of this opinion.

---

[5]    The immigration cases that Mr. Ollis relies on are inapposite since none involves notice regarding entitlement to monetary benefits. *See United States v. Lopez-Velasquez*, 629 F.3d 894 (9th Cir. 2010); *United States v. Copeland*, 376 F.3d 61 (2d Cir. 2004); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004).

## AFFIRMED IN PART, VACATED IN PART, AND REMANDED

COSTS

Costs to appellant.