﻿Citation Nr: AXXXXXXXX
Decision Date: 01/29/21 Archive Date: 01/29/21

DOCKET NO. 200219-63873
DATE: January 29, 2021

ORDER

Entitlement to Dependency and Indemnity Compensation (DIC) pursuant to 38 U.S.C. § 1151 for the cause of the Veteran’s death is denied.

FINDINGS OF FACT

1. The Veteran died in May 2018. His death certificate identifies the immediate cause of death as acute metabolic encephalopathy with presumed Creutzfeldt-Jacob disease.

2. The probative evidence weighs against a finding that the proximate cause of the Veteran’s death was carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department of Veterans Affairs (VA) in furnishing the hospital care, to include medical and surgical treatment, or an event not reasonably foreseeable.

CONCLUSION OF LAW

The criteria for entitlement to DIC pursuant to 38 U.S.C. § 1151 for the cause of the Veteran’s death have not been met. 38 U.S.C. §§ 1151, 5107; 38 C.F.R. §§ 3.102, 3.361.

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran served on active duty from October 1967 to October 1991. He died in May 2018. The Appellant is the Veteran’s surviving spouse.

In January 2020, the Appellant submitted a VA Form 20-0996, Decision Review Request: Higher-Level Review (HLR), and requested review of a December 2019 rating decision. The Appellant testified before a HLR officer in December 2019. In the same month, the agency of original jurisdiction (AOJ) issued the HLR decision on appeal, which considered the evidence of record at the time of the initial rating decision. The Appellant timely appealed the January 2020 Appeals Modernization Act (AMA) rating decision to the Board and requested direct review of the evidence considered by the AOJ. 38 C.F.R. § 20.301.

DIC pursuant to 38 U.S.C. § 1151

Compensation under section 1151 "shall be awarded for a qualifying additional disability or a qualifying death of a veteran in the same manner as if such additional disability or death were service-connected,” if the death was not the result of the veteran’s willful misconduct and the death was caused by hospital care or medical treatment furnished by the VA and the proximate cause of the death was carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the hospital care, medical or surgical treatment, or examination, or an event not reasonably foreseeable. See 38 U.S.C.§ 1151.

To establish causation, the evidence must show that the hospital care or medical or surgical treatment resulted in the Veteran’s death. Merely showing that a Veteran received care or treatment and that the Veteran died does not establish causation. 38 C.F.R. § 3.361(c)(1). 

Hospital care or medical or surgical treatment cannot cause the continuance or natural progress of a disease of injury for which the care or treatment was furnished unless VA’s failure to timely diagnose and properly treat the disease or injury proximately caused the continuance or natural progress. 38 C.F.R. § 3.361(c)(2).

To establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance on VA’s part in furnishing hospital care, medical or surgical treatment, or examination proximately caused a veteran’s additional disability, it must be shown that the hospital care or medical or surgical treatment caused the Veteran’s death; and (i) VA failed to exercise the degree of care that would be expected of a reasonable health care provider, or (ii) VA furnished the hospital care or medical or surgical treatment without the Veteran’s representative’s informed consent. 38 C.F.R. § 3.361(d)(1). Determinations of whether there was informed consent involve consideration of whether the health care providers substantially complied with the requirements of 38 C.F.R. § 17.32. Minor deviations from the requirements of 38 C.F.R. § 17.32 that are immaterial under the circumstances of a case will not defeat a finding of informed consent. 38 C.F.R. § 3.361(d)(1).

Whether the proximate cause of a Veteran’s death was an event not reasonably foreseeable is, in each claim, to be determined based on what a reasonable healthcare provider would have foreseen. The event need not be completely unforeseeable or unimaginable but must be one that a reasonable healthcare provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable healthcare provider would have disclosed in connection with the informed consent procedures of 38 C.F.R. § 17.32. See 38 C.F.R. § 3.361(d)(2).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Entitlement to DIC pursuant to 38 U.S.C. § 1151 for the cause of the Veteran’s death.

The Appellant contends the Little Rock VA Medical Center (VAMC) was negligent in furnishing the Veteran with hospital care, in the diagnoses provided, and medical treatment, which then contributed to his death. The Appellant specifically contends that Little Rock VAMC staff members would go days without providing food or liquid to the Veteran prior to his death, and there seemed to be a lack of concern from staff members. In addition, the Appellant contends that the Veteran had no prior diagnoses for the two illnesses listed on his death certificate and that VA staff members “kept talking about him being alcoholic,” except that he did not have such a diagnosis prior to VA hospitalization. See October 2018 VA Form 21-4138, Statement in Support of Claim.

Based on review of the competent and credible evidence, entitlement to DIC compensation under section 1151 is not warranted. The Veteran’s death is not shown to have been caused by VA medical treatment or hospital care and it is not shown to have been proximately caused by an instance of fault by VA.

A March 2018 private emergency room record indicates that he first presented with altered mental status, poor memory, and declining motor skills in late February 2018. The family reported the Veteran was a daily drinker of beer, usually less than six per day. The computed tomography (CT) scan report reflected no acute-appearing intracranial mass or hemorrhage was seen, but that he did have moderate sinus disease. No etiology was found at that time and he was discharged for follow-up with his primary care physician.

The records from the Baptist Health Family Clinic reflected that the Veteran was established as a new patient in mid-March 2018. He was seen regarding concerns with his memory, slowed speech, altered thought process, and confusion. The family mentioned how active he was prior to late February 2018. His son-in-law mentioned that he would buy four 30 packs of beer, every two weeks. The provider noted the magnetic resonance imaging (MRI) report showed signs of vascular dementia that she would have expected to see more slow onset. Emergency department records from St. Vincent Hospital reflect the Veteran’s family reported that he drank alcohol daily, usually less than 6 beverages per day.

VA treatment records showed that emergency care was sought at the end of March 2018 at Little Rock VAMC for rapid decline in mental status since late February 2018. The family noted no prior medical problems until this. The initial diagnostic impressions were altered mental status (AMS) or rapid onset dementia. The Veteran was then admitted thereafter. The patient history provided was that he was very healthy prior to hospitalization; that he walked three to five miles daily, did work outdoors, rarely saw doctors, was independent, and was social, including drinking with his neighbor. Reports of alcohol consumption was around eight beers per day, per Appellant. A review of the VA nursing notes reflected multiple times where the Veteran refused fluids or meals offered, including times when the Appellant was visiting at bedside. At times, the Veteran was agitated or physical toward VA medical personnel. Other treatment notes reflected VA medical personnel consistently assisting with hygiene and toileting care; bedding changes; positioning changes; neuro checks every four hours to orient the Veteran to time, place, and situation; nutrition consultations; and physical or occupational therapy when he was able to participate.

During this time, multiple diagnostic studies were performed, to evaluate the Veteran’s AMS, including CT scans, MRIs, electroencephalograms (EEG), and lumbar puncture. For the more invasive procedures, such as a lumbar puncture, a signed informed consent from the Appellant was obtained. The Appellant was informed of all risks and consulted. When the Veteran had dysphagia (impaired swallowing), adjustments in his diet were made to avoid further complications. A feeding tube was later placed in the Veteran; there was a signed informed consent form in the records.

A mid-April 2018 VA social worker consultation reflected a discussion with the Appellant regarding the likelihood of nearing the end of what could be done for the Veteran medically at that time. The Appellant became upset about being concerned with not knowing the cause of the Veteran’s illness, but still wished to take him home and was not interested in a nursing home placement. The Appellant requested all durable medical equipment (DME) needed to care for him at home be provided. The record reflected that the Veteran was discharged once the DME was received and the Appellant was provided education on tube feedings.

On the date of discharge, the VA treatment record noted that the Veteran was afebrile, with vital signs stable. The clinician noted that the Veteran was at what was likely his new baseline cognitively.

Three days later, the Veteran was readmitted with the Appellant asserting there was an issue with supplies and having difficulty with the care. The VA treatment records showed the clinician recommending palliative care with consideration of hospice care if the feeding tube was removed. The Veteran’s family agreed. VA hospice care was provided until the Veteran’s death.

In this case, VA obtained a medical opinion in February 2019. The VA examiner reviewed the Veteran’s claims file and relevant private and VA treatment records in order to provide an opinion regarding the DIC pursuant to a Section 1151 claim. The examiner opined that based on review of the body of evidence and relevant medical literature, as well as in accordance with accepted medical principles, it was less likely than not that there was evidence of fault on the part of VA that caused the Veteran’s death and/or significantly contributed to his death. The body of evidence did not show evidence of fault on the part of VA in the prescribed course of care.

The examiner explained that according to the medical records, the Veteran did not seek healthcare for years prior to development of his terminal condition of mental status deterioration. He presented to the Little Rock VAMC only after his mental status deterioration condition had developed. 

The examiner found that the record reflected that the Veteran had extensive studies to evaluate his mental status deterioration, including multiple laboratory tests, imaging studies, and evaluations for seizure. He was evaluated by multiple specialists, including neurologists, infectious disease specialists, and radiologists. The examiner noted that unfortunately, despite this extensive evaluation no definitive diagnosis was found for his mental status deterioration.

The examiner also noted that family members reported the Veteran drank alcohol extensively for years, which may have contributed or caused his mental status deterioration (multiple physicians reported this was Veteran’s most likely underlying condition). The Veteran was treated empirically for possible vitamin deficiencies caused by heavy alcohol consumption. He was provided with appropriate supportive care (e.g., nutrition, medication, comfort) during his terminal hospitalizations. The possibility of a diagnosis of Creutzfeldt-Jakob Disease (a rare brain infection) was considered, although felt to be unlikely. The examiner noted that a possibility of a brain biopsy for diagnostic purposes was discussed and that given the absence of treatment for this infection it was determined that the risk of such a brain biopsy outweighed any possible clinical benefit to the Veteran. The examiner explained that this was an appropriate, medically-sound decision in keeping with medical standards of care.

He further noted that when meaningful recovery was determined to be unlikely, a transition to hospice care was offered and accepted by multiple family members. The examiner found that the body of evidence did not indicate the Appellant had concerns with VA provided care during his lifetime, as the records indicate that she was in agreement with provided care. In summary, the Veteran unfortunately died from his mental status deterioration condition; the body of record does not show evidence of fault on the part of VA in the prescribed course of care.

Additional statements by the Appellant and from family friends were received. The Appellant asserted that the Little Rock VAMC staff members made a decision about alcohol and then stopped trying to find out what was wrong with the Veteran, which indicated carelessness, lack of proper action and care. See April 2019 VA Form 21-4138, Statement in Support of Claim. C.T. and D.T. asserted that the Veteran was active in the community and proud of his yard; he was respectful, and his character and morals were commendable. The Veteran told them he had not been sick or gone to a hospital in many years and he was never in an inebriated state. A.C. stated that she has never witnessed the Veteran drinking in excess or seemed impaired. Other statements received from M.R.R., J.W.S., Reverend E.A.F., C.D.W., L.W., also echoed the same sentiments as those by A.C., C.T., and D.T. A statement by D.M., a “P.D.” indicated that she never saw him overindulge in alcohol and asserted that VA’s treatment for alcohol-induced encephalopathy was “incorrect since the standard treatment with B-12 did not improve his condition.” She opined that the Veteran’s cause of death noted on his death certificate of encephalopathy due to presumed Creutzfeldt-Jacob disease (CJD) was “most likely contracted as a young airman overseas” and provided an explanation on CJD.

As noted above, entitlement to DIC compensation under section 1151, requires two causation elements to be met - the veteran’s death must be “caused by” VA hospital care or medical treatment and it must be “proximately caused” by VA’s “fault” or an unforeseen event. 38 U.S.C.§ 1151(a)(1)(A), (B); see Viegas v. Shinseki, 705 F.3d 1374, 1377-78 (Fed. Cir. 2013); see Ollis v. Shulkin, 857 F.3d 1338, 1341 (Fed. Cir. 2017). 

VA “fault” is established when VA medical care or treatment caused disability or death and VA either “failed to exercise the degree of care that would be expected of a reasonable health care provider” or furnished the hospital care or medical or surgical treatment without the veteran’s informed consent. 38 C.F.R. § 3.361(d)(1)(i), (ii) (2020). 

In this case, review of the competent and credible evidence, fails to establish that the Veteran’s death was caused by VA medical treatment or hospital care and proximately due to an instance of fault by VA.

The Veteran’s May 2018 death certificate noted that his immediate cause of death was acute metabolic encephalopathy, with presumed Creutzfeldt-Jacob disease. Other than the Appellant's contentions, there is no competent medical evidence establishing that the Veteran’s fatal conditions were caused by the VA medical care he received in 2018, or that his death was proximately due VA’s carelessness, negligence, lack of proper skill, or any other instance of fault. To the extent that the Appellant believes that the Veteran’s death was due to the Little Rock VAMC staff members stopped trying to find out what he had or providing care or treatment, the Board notes that the record reflected that the Veteran had extensive studies to evaluate his mental status deterioration. The record showed consistent VA treatment and care, multiple consultations with specialists in neurology, infectious diseases, and radiology, and the February 2019 examiner reached the same conclusion.

On the question of the cause of the Veteran’s death, the Board finds the February 2019 VA medical opinion competent and probative. The examiner reviewed the Veteran’s private and VA treatment records and came to a fully supported conclusion with adequate rationale. There is no equally probative competent and credible medical opinion to the contrary.

The Board has considered the Appellant’s lay contentions with respect to the Veteran’s death, as well as the statements provided by M.R.R., J.W.S., Reverend E.A.F., C.D.W., L.W., A.C., C.T., and D.T. They are competent to describe observable sequences of certain events, but they are not competent to provide an opinion as to whether the Veteran’s death was proximately due to VA treatment, or whether the VA medical personnel demonstrated carelessness, negligence, lack of proper skills, error in judgment or similar instance of fault. An opinion regarding the cause of death of the Veteran’s falls outside the realm of common knowledge of a lay person, that is, the opinion cannot be based on mere personal observation, which comes through sensory perception. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Such opinions require medical expertise and clinical training. Id. None of these individuals, including D.T., PD, identified themselves as medical professionals or having medical training, education or expertise. Thus, to the extent their statements are proffered to establish causation, the Board is unable to assign any probative value to such. 

To the extent that the VA examiner did not review these statements, the Board does not find the probative value of his medical opinion lessened. These individuals attested to their personal knowledge regarding the Veteran’s use of alcohol (or lack thereof) and generally indicated that the Veteran rarely drank alcoholic beverages and was not observed to be impaired, or to imbibe alcoholic beverages to excess. The Board observes, however, that the Veteran’s family members provided contrary history to medical professionals during the course of his treatment. Indeed, private medical providers were informed in March 2018 by the Veteran’s family members that he frequently purchased alcoholic beverages and was a daily drinker of such. The Board finds the relevant history regarding the Veteran’s use of alcohol, as relayed by his family during the course of treatment, credible. In short, the VA examiner was informed of the relevant medical history and the credible lay testimony pertinent to the matter at hand.

In the absence of competent medical evidence to establish that the Veteran’s death was proximately caused by an instance of fault by VA during the course of medical care, DIC compensation under 38 U.S.C. § 1151 is not warranted. The Board has considered the doctrine of reasonable doubt; however, the preponderance of the competent evidence is against this claim. Accordingly, the benefit of the doubt doctrine is not for application. See Gilbert, supra. 

(Continued on the next page)

 

While the Board is sympathetic to the Appellant for the loss of her husband, and is grateful for his honorable military service, the legal requirements for DIC compensation under 38 U.S.C. § 1151 are not met. The claim is denied.

 

 

D. JOHNSON

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. Tang, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.