# United States Court of Appeals for the Federal Circuit

---

**THOMAS S. CARTER,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2021-2077

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-7598, Judge Michael P. Allen.

---

Decided:  August 29, 2022

---

KENNETH DOJAQUEZ, Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

MATTHEW JUDE CARHART, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, LOREN MISHA PREHEIM; CHRISTOPHER O. ADELOYE, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before MOORE, *Chief Judge*, PROST and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Thomas S. Carter appeals from a decision of the United States Court of Appeals for Veterans Claims affirming a Board of Veterans' Appeals decision denying Mr. Carter service connection for a head injury. Because the Veterans Court did not commit legal error in concluding that Mr. Carter's injury was the result of his own willful misconduct and is therefore ineligible for service connection, we affirm.

I

Mr. Carter served on active duty in the U.S. Marine Corps from 1979 until 1980. While in service, he was involved in an incident with military police (MP), who identified him as an individual who had damaged a government vehicle. According to the police report, Mr. Carter became combative during his apprehension and struck one of the MPs, after which point a different MP struck Mr. Carter in the head with his night stick. It is undisputed that this interaction resulted in an in-service head injury to Mr. Carter, and that Mr. Carter currently has residuals of a traumatic brain injury due to the incident.

In 1981, Mr. Carter filed his first claim with Veterans Affairs seeking benefits for his head injury. The VA regional office denied his claim, explaining that under 38 C.F.R. § 3.301(a), service connection may be granted only when a disability was incurred or aggravated in the line of duty "and not the result of the veteran's own willful misconduct." J.A. 21. The regional office concluded that, because Mr. Carter "sustained his injuries while forcibly resisting arrest," his action "was the proximate cause of his injuries," and therefore his injuries "[were] the result of [his] own willful misconduct" under the definition of willful

misconduct in 38 C.F.R. § 3.1(n). J.A. 22. Mr. Carter did not appeal, and the decision became final.

Mr. Carter filed a second claim seeking benefits for his traumatic brain injury in November 2009. The regional office denied the claim, but the Board of Veterans' Appeals reopened the matter in November 2014 and remanded it back to the regional office for further development. After the regional office completed additional fact finding, the Board determined that the only issue in dispute was whether Mr. Carter's in-service injury was the result of his own willful misconduct. If so, service connection could not be granted under 38 U.S.C. § 105(a). The Board noted the requirements of 38 C.F.R. § 3.1(n): that willful misconduct "involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences" and "will not be determinative unless it is the proximate cause of injury, disease or death." J.A. 25 (citing 38 C.F.R. § 3.1(n)(1), (n)(3)). The Board ultimately concluded that Mr. Carter's combative behavior during his arrest "represent[ed] deliberate or intentional wrongdoing on the part of [Mr. Carter] and reckless disregard of its probable consequences," and that the MP's use of force in response "reasonably f[ell] within the realm of 'probable consequences.'" J.A. 27. It thus denied Mr. Carter's claims because his injury was the result of his own willful misconduct.

Mr. Carter appealed to the Veterans Court, which affirmed. *Carter v. McDonough*, No. 19-7598, 2021 WL 954825, at *4 (Vet. App. Mar. 15, 2021) (*Veterans Court Decision*). The Veterans Court concluded that the Board had applied the correct legal standard in determining that Mr. Carter's head injury was the result of his own willful misconduct, and that its factual determinations were not clearly erroneous. *Id.* at *3–4. Mr. Carter appeals.

## II

Mr. Carter argues that the Veterans Court implicitly misinterpreted the legal standard for "willful misconduct" in 38 U.S.C. §§ 105(a) and 1131. Under 38 U.S.C. § 7292(a) and (c), we have jurisdiction to review the Veterans Court's interpretation of those statutes. We review statutory and regulatory interpretations of the Veterans Court de novo. *Gazelle v. Shulkin*, 868 F.3d 1006, 1009 (Fed. Cir. 2017).

In Mr. Carter's view, the phrase "result of the veteran's own willful misconduct," as used in §§ 105(a) and 1131, should not be interpreted to "permit an injury resulting from the conduct of another person to be imputed upon the veteran no matter what the veteran's conduct or actions." Appellant's Br. 6. He asserts that his injury was not due to his own willful misconduct but was the result of another person's conduct: the MP who struck him on the head. We must determine if the statutes and the associated regulation defining willful misconduct, 38 C.F.R. § 3.1(n), bar a veteran's claim for benefits only if his own misconduct was the direct cause of his injury, as Mr. Carter argues.

## A

We begin with the statutory and regulatory language. 38 U.S.C. §§ 105(a) and 1131 bar a veteran from receiving benefits for an in-service injury or disability "if the disability is a result of the veteran's own willful misconduct." *Id.* § 1131. The VA has defined "willful misconduct" by regulation:

> ***Willful misconduct*** means an act involving conscious wrongdoing or known prohibited action. . . .
>
> (1) It involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences.
>
>     . . . .

>    (3) Willful misconduct will not be determinative unless it is the proximate cause of injury, disease or death.

38 C.F.R. § 3.1(n).

Together, the statutes deny service connection for an injury if it is "the result of the veteran's own willful misconduct," and the regulation further requires that the misconduct be "the proximate cause of injury." In *Ollis v. Shulkin*, a case involving a veteran's benefits claim for a qualifying additional disability, we construed a statute that required "the proximate cause of the disability or death" to be the "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the [VA]." 857 F.3d 1338, 1340 (Fed. Cir. 2017) (quoting 38 U.S.C. § 1151(a)). We concluded that proximate cause is defined "in terms of foreseeability," so that liability "extend[s] only to those foreseeable risks created by the negligent conduct." *Id.* at 1344 (citing *Paroline v. United States*, 572 U.S. 434, 445 (2014)).

Under Mr. Carter's proposed construction of the statutes, the veteran's own willful misconduct must be the direct cause of the veteran's injury for benefits to be denied. There can be no intervening willful action of another person in the causal chain. *See* Appellant's Br. 12. Thus, if Mr. Carter had injured himself when he initially struck the MP while resisting arrest, that would be an injury that "is a result of the veteran's own willful misconduct." But any harm suffered afterward, when the MPs responded to Mr. Carter's initial strike, is not the "result of" his own willful misconduct.

The statutes do not say that the injury must be the "immediate" or "direct" result of the veteran's misconduct. Nor do they say that the veteran's misconduct must be the "immediate" or "direct" cause of the injury. They merely state that the injury must be the "result of" the misconduct, 38 U.S.C. §§ 105(a) and 1131, and the VA's regulation further

requires that the misconduct be the proximate cause of the injury, 38 C.F.R. § 3.1(n)(3). Mr. Carter's reading of the statutes ignores the regulation's proximate causation requirement. Proximate cause does not require that the cause be the last link in the causal chain, nor is it necessarily extinguished due to the intervening acts of others. Rather, it "limits legal responsibility to 'those [but-for] causes which are so closely connected with the result . . . that the law is justified in imposing liability.'" *Ollis*, 857 F.3d at 1344 (alterations in original) (quoting W. Page Keeton et al., *Prosser & Keeton on Torts* § 41, at 264 (5th ed. 1984)).

Here, the regulation requires a determination of whether "the causal link between conduct"—Mr. Carter's resisting arrest—"and result"—his head injury—"is so attenuated that the consequence is more aptly described as mere fortuity." *Paroline*, 572 U.S. at 445. The Board understood that inquiry and determined that the head injury was not a mere fortuity but rather "resulted from the military police officer's striking [Mr. Carter]," which in turn "was a probable consequence of [Mr. Carter's] resisting the officers." *Veterans Court Decision* at *3. The Veterans Court affirmed. *Id.*[1]

Mr. Carter does not challenge the regulation. *See* Oral Arg. at 11:20.[2] Rather, he asserts that the regulation applies only when determining what constitutes willful misconduct, not when determining what is a "result of" that misconduct. Appellant's Br. 13. While the regulation does

---

[1]    To the extent Mr. Carter challenges the Veterans Court's factual determinations or its application of the legal standard to the facts of his case, we lack jurisdiction to review them. 38 U.S.C. § 7292(d)(2).

[2]    A recording of the oral argument is available at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21 -2077_07052022.mp3.

define willful misconduct, it also explains when willful misconduct is determinative—i.e., when it may preclude a veteran from receiving benefits: "Willful misconduct will not be determinative unless it is *the proximate cause of injury . . . .*" 38 C.F.R. § 3.1(n)(3) (emphasis added). This part of the regulation focuses on causation once the willful misconduct has already been identified, providing a standard for determining whether the injury is the "result of" that misconduct. Mr. Carter's construction would have us ignore that regulatory language and assume that Congress departed from traditional principles of causation, intending to bar only those injuries that were directly caused by the veteran's willful misconduct. We decline to do so.

## B

Mr. Carter also argues that the Veterans Court's interpretation conflicts with the Supreme Court's interpretation of the phrase "results from" in *Burrage v. United States*, 571 U.S. 204 (2014). Appellant's Br. 10–12. In *Burrage*, the Supreme Court explained that something "results" when it "[a]rise[s] as an effect, issue, or outcome *from* some action, process or design," and thus "a phrase such as 'results from' imposes a requirement of but-for causation." *Burrage*, 571 U.S. at 210, 214 (alterations in original). An event cannot be the result of an action "if the action merely played a non-essential contributing role in producing the event." *Id.* at 212. Mr. Carter argues that, under *Burrage*, his "willful misconduct was not the but-for cause of his head injury"—rather, the MP's striking him on the head was. Appellant's Br. 12. We disagree.

*Burrage* provides a but-for causation standard to determine actual cause or cause in fact. Actual cause simply means that "the former event caused the latter." *Paroline*, 572 U.S. at 444. Proximate causes are a subset of but-for causes—to say one event proximately caused another means that, first, the former event caused the latter, and second, that it has a sufficient connection to the result to

impose liability. *Id.*; *Ollis*, 857 F.3d at 1344 ("Proximate cause limits legal responsibility to 'those [but-for] causes which are so closely connected with the result . . . that the law is justified in imposing liability.'" (alterations in original) (quoting Keeton et al., *supra*, § 41, at 264)). So, to the extent *Burrage* applies to these circumstances, the Veterans Court's proximate cause determination satisfies its but-for causation standard because Mr. Carter's initial action of striking an MP officer—causing an MP officer to strike back—cannot reasonably be considered to have "played a nonessential contributing role in producing" his head injury. *Burrage*, 571 U.S. at 212. Rather, his head injury would not have happened "but for" that initial action. Indeed, the Veterans Court affirmed the Board's determination that "the head injury resulted from the military police officer's striking [Mr. Carter] and that this action was a probable consequence of [Mr. Carter's] resisting the officers." *Veterans Court Decision* at *3.

## III

We have considered Mr. Carter's remaining arguments and find them unpersuasive. The Veterans Court correctly interpreted the willful misconduct standard in 38 U.S.C. §§ 105(a) and 1131, and so we affirm its decision denying Mr. Carter service connection for his head injury.

**AFFIRMED**

COSTS

No costs.